# Illinois Official Reports

## Supreme Court

---

### *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*, 2015 IL 118975

---

| | |
|---|---|
| Caption in Supreme Court: | DG ENTERPRISES, LLC-WILL TAX, LLC, Appellant, v. VINCENT F. CORNELIUS, as Independent Administrator of the Estate of Lorrayne M. Cornelius, Deceased, Appellee. |
| Docket No. | 118975 |
| Filed | December 3, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Bobbi Petrungaro, Judge, presiding. |
| Judgment | Judgments reversed. |
| Counsel on Appeal | Timothy A. Clark and Thomas E. Cowgill, of Krockey, Cernguel, Cowgill & Clark, Ltd., of Joliet, for appellant. |
| | George F. Mahoney, of Mahoney, Silverman & Cross, LLC, of Joliet, and Vincent F. Cornelius, of Wheaton, for appellee. |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1 The principal issues presented in this case are (1) whether an order issuing a tax deed is void and subject to collateral attack because of the failure to include the address and phone number of the county clerk in the publication and certified mail take notices that were required to be sent to the delinquent owner prior to the issuance of the tax deed and (2) whether due process standards were violated where certified mail notices to the owner were return unclaimed. We answer both questions in the negative.

¶ 2           BACKGROUND

¶ 3 The petitioner, DG Enterprises, LLC-Will Tax, LLC, purchased the 2007 delinquent real estate taxes for the property commonly known as 716 Henderson Avenue, Joliet, Illinois, from the Will County collector at a public auction on November 6, 2008.

¶ 4 Section 22-5 of the Property Tax Code (Tax Code) provides that in order to seek a tax deed after the tax sale, the tax purchaser must deliver a "Notice of sale and redemption rights" (Take Notice I) to the county clerk to be given to the party in whose name the taxes were last assessed. 35 ILCS 200/22-5 (West 2008). This notice must be delivered to the county clerk within 4 months and 15 days after the tax sale, and the county clerk must mail the notice within 10 days of receipt by registered or certified mail. *Id.*

¶ 5 On February 4, 2009, in accord with requirements of section 22-5 of the Tax Code, the petitioner drafted and then requested that the Will County clerk send by certified mail the completed Take Notice I form to the respondent, Lorrayne M. Cornelius,[1] the owner of record and the party in whose name taxes were last assessed. The Take Notice I advises the party that his or her property has been sold for delinquent taxes, that redemption can be made until the specified date, and that a petition for tax deed will be filed by the tax purchaser if redemption is not made. *Id.*; *In re Application of the County Collector*, 225 Ill. 2d 208, 212 (2007). Section 22-5 requires that the Take Notice I form be in at least 10 point type in the form set forth in the statute "completely filled in." 35 ILCS 200/22-5 (West 2008). The petitioner filled in all of the required information for the Take Notice I except the address and phone number for the Will County clerk. The certified mail notice was returned by the post office unclaimed.

¶ 6 The redemption period before the tax sale was eventually extended to November 4, 2011. The petitioner ordered a title examination and a commitment for title insurance showing the necessary parties for tax deed. The examination and commitment for title insurance showed that title to the property in question was vested in Lorrayne M. Cornelius and also revealed the names of other persons interested in the property.

¶ 7 The Tax Code provides that "within 6 months but not less than 3 months prior to the expiration of the redemption period," the tax purchaser may file a petition in the circuit court seeking an order directing the county clerk to issue a tax deed to the property if it is not redeemed from the sale. 35 ILCS 200/22-30 (West 2010). On July 6, 2011, within the applicable statutory time frame, the petitioner filed a petition for tax deed.

---

[1]Lorrayne M. Cornelius is now deceased, and Vincent F. Cornelius, as independent administrator of her estate, has been substituted as party respondent.

¶ 8        In order to receive an order issuing a tax deed, the redemption period must expire without any redemption taking place, and the tax purchaser must prove to the circuit court that it has strictly complied with the statutory notice provisions set forth in sections 22-10 through 22-25 of the Tax Code (35 ILCS 200/22-10 through 22-25 (West 2010)). 35 ILCS 200/22-30 (West 2010); *In re Application of the County Collector*, 225 Ill. 2d at 213. Section 22-10 of the Tax Code provides for a second notice (Take Notice II) to be sent to the owners, occupants or parties interested in the delinquent property not less than three months or more than six months prior to the expiration of the period of redemption. 35 ILCS 200/22-10 (West 2010). The required format of the Take Notice II in section 22-10 is nearly identical to the Take Notice I in section 22-5, and both require the address and phone number of the county clerk to be filled in.

¶ 9        In addition to the Take Notice II in section 22-10, the Tax Code also requires in section 22-25 that the clerk of the circuit court of the county in which the property is located send a take notice by certified mail. 35 ILCS 200/22-25 (West 2010). Section 22-25 provides that the petitioner is to prepare and deliver to the clerk of the court the take notice under this section, which is to "be identical in form to that provided by Section 22-10." *Id.*

¶ 10        Finally, the Tax Code provides that the petitioner is to "give the notice required by Section 22-10 by causing it to be published in a newspaper *as set forth in Section 22-20.*" (Emphasis added.) 35 ILCS 200/22-15 (West 2010). Unlike section 22-25, which provides that the certified mail notice sent by the clerk of the court be "identical in form" to the section 22-10 Take Notice II, section 22-20 does not provide that the publication notice be in identical form to the section 22-10 Take Notice II. 35 ILCS 200/22-25, 22-20 (West 2010). Instead section 22-20 specifically lists the information the publication notice must contain and, among the criteria, the address and phone number of the county clerk is not listed. Specifically, section 22-20 provides that "[t]he publication shall contain (a) notice of the filing of the petition for tax deed, (b) the date on which the petitioner intends to make application for an order on the petition that a tax deed issue, (c) a description of the property, (d) the date upon which the property was sold, (e) the taxes or special assessments for which it was sold and (f) the date on which the period of redemption will expire." 35 ILCS 200/22-20 (West 2010).

¶ 11        On July 6, 2011, the same day it filed its petition for tax deed, the petitioner placed the take notices required by section 22-25 for mailing with the clerk of the circuit court of Will County. The notice was sent by the clerk of the court by certified mail, and was mailed to "Lorrayne M. Cornelius, Melvin R. Cornelius and Occupants," at the 716 Henderson Avenue address. Three attempted certified mailings were later returned unclaimed to the clerk by the postal service.

¶ 12        The petitioner also took additional steps to complete personal service on the respondent and all other interested parties. See 35 ILCS 200/22-15 (West 2010). The petitioner employed the services of a licensed process server who attempted 11 times to personally serve the respondent and all other interested parties on 9 different dates at different times of the day over a two and a half week period from July 19, 2011, through August 5, 2011. The process server's return states, "no contact *** 11 attempts. Vehicle in driveway *** outside storm doors locked *** no one answers our inquiries at the door." Further, the take notices required by section 22-10 were delivered to the county sheriff for mailing. The post office

showed three different attempts of the certified mail notice on July 15, July 20 and July 30, 2011. All the certified mailings went unclaimed.

¶ 13 Newspaper publication of the notice for application of an order for tax deed was timely published in accordance with the requirements of section 22-20 of the Tax Code. The publication occurred in the Joliet Times Weekly, a newspaper of general circulation published in Joliet, Illinois. The publication occurred three times after the petition for tax deed was filed: July 14, July 21 and July 28, 2011.

¶ 14 No redemption was made on or before the expiration date of November 4, 2011.

¶ 15 On November 17, 2011, a hearing was held on petitioner's application. Neither the respondent nor any other interested person appeared at the hearing. The petitioner presented testimony and an affidavit in support of its application for an order directing a tax deed to issue. The circuit court of Will County ordered issuance of a tax deed to petitioner, finding, among other things, the following:

> "The person in whose name the real estate was last assessed for general taxes and the owners of and all other persons interested in that real estate are respondents to the Petition [of petitioner DG Enterprises] and have been duly and regularly notified of the pendency of the hearing on that Petition by service of notice hereof, all less than six months and more than three months prior to the expiration of the period of redemption, as extended, from that sale and all as provided by Sections 200/22-10, 22-15, 22-20, 22-25, and 200/22-30 of the Property Tax Code, as amended. Petitioner has given, or caused to be given, all notices required by law and by Sections 200/22-10, 22-15, 22-20, 22-25 and 200/22-30 of the Property Tax Code, as amended. Petitioner has given the notice required by Section 200/22-5 of the Property Tax Code, as amended.

> *** Petitioner has complied with all provisions of the law and of the statutes in such case made and provided and is entitled to receive a tax deed to that real estate."

¶ 16 On March 14, 2012, the respondent filed an appearance through counsel and a combined motion to dismiss pursuant to sections 2-301 and 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-301, 2-1401 (West 2010)) and section 22-45(3), (4) of the Tax Code (35 ILCS 200/22-45(3), (4) (West 2010)). Respondent argued that petitioner's take notices and publication notices were fatally defective under the statute and failed to comply with due process, depriving the court of jurisdiction and rendering the order for the tax deed void so that it could be attacked at any time.

¶ 17 Following a nonevidentiary hearing, the circuit court granted respondent's combined motion on the pleadings alone and vacated its previous order issuing the tax deed to petitioner. Petitioner's motion to reconsider was denied.

¶ 18 Petitioner appealed, and a divided appellate court affirmed the vacating of the tax deed order. 2014 IL App (3d) 130288. In so doing, the majority first found that the circuit court erred in finding that the tax deed order was void for lack of *in personam* jurisdiction. The majority then concluded that the tax deed order was nonetheless void for failure to give proper statutory notice. In the majority's view, the failure to completely fill in the information on the Take Notices I and II with the address and phone of the county clerk meant that "the petitioner did not, therefore, 'serve [the respondent] with the notices required by section 22-10 through 22-30.' " *Id.* ¶ 33.

¶ 19        The appellate court dissent disagreed with the majority's conclusion that a technical defect in the Take Notices I and II could render the tax deed void. According to the dissent, once the trial court acquires jurisdiction over the land, any subsequent challenge to the issuance of the tax deed renders its order voidable, not void. *Id.* ¶ 42 (Schmidt, J., dissenting). Moreover, the grounds for collaterally challenging the issuance of a tax deed are specifically limited by the legislature to the grounds listed in section 22-45 of the Tax Code (35 ILCS 200/22-45 (West 2010)). 2014 IL App (3d) 130288, ¶ 47 (Schmidt, J., dissenting). The dissent noted that respondent had requested that the court grant relief under section 22-45(4),[2] but respondent's failure to allege that petitioner did not name her in the notice prevented respondent from establishing grounds for relief under that subsection. Finally, the dissent noted that "[c]onspicuously absent from section 22-45 is the basis relied upon by the majority: a failure to provide the name and phone number of the county clerk in the take notice." *Id.* ¶ 48.

¶ 20        Petitioner filed a petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)), which we granted. For the reasons that follow, we reverse the judgments of the circuit and appellate courts.

¶ 21                              ANALYSIS

¶ 22                            I. Statutory Relief

¶ 23        The case before us is based on respondent's collateral attack of the tax deed under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). The review of an order granting a section 2-1401 petition on the pleadings alone is *de novo*. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007).

¶ 24        This court has observed that two competing policy concerns are implicated by collateral attacks on tax deed orders:

> "On the one hand, '[t]he forced sale of a home is a grave and melancholy event' [citation] that can have severe consequences for the delinquent taxpayer. Allowing a collateral attack upon the tax deed order provides the delinquent taxpayer with an opportunity, in addition to the direct appeal, to ensure that the order was properly obtained. On the other hand, the availability of a collateral challenge to the tax deed order tends to undermine the finality and, hence, the marketability of the tax deed. This point is significant because tax purchasers participate in the tax sale system in order to obtain marketable titles. [Citation.] If tax purchasers do not participate in tax sales, then delinquent taxpayers lose the incentive to pay their real estate taxes and tax revenues fall." *In re Application of the County Collector*, 217 Ill. 2d 1, 17-18 (2005) (*Lowe I*).

¶ 25        In section 22-45 of the Tax Code, the legislature has expressed the balance it has struck between these competing public policies. *Id.* at 21-22. Section 22-45 provides in relevant part as follows:

---

[2]The dissent also noted that respondent had requested relief under subsection 22-45(3), which allows collateral attack where there is proof that the tax purchaser procured the deed by fraud or deception. 35 ILCS 200/22-45(3) (West 2010). Respondent seems, however, to have abandoned section 22-45(3) as grounds for relief in the appeal before this court.

"§ 22–45. Tax deed incontestable unless order appealed or relief petitioned. Tax deeds issued under Section 22–40 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Sections 2–1203 or 2–1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under those Sections with respect to final orders and judgments in other proceedings. The grounds for relief under Section 2–1401 shall be limited to:

(1) proof that the taxes were paid prior to sale;

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22–20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22–20 through 22–30." 35 ILCS 200/22-45 (West 2010).

Specifically, respondent relied upon subsection 22-45(4), but this ground is invoked by a person or party with a recorded interest in the tax deed property who was not served notice in any manner whatsoever. *Lowe I*, 217 Ill. 2d at 21; *In re Application of the County Collector*, 397 Ill. App. 3d 535, 544 (2009) ("section 22-45(4) allows relief from a tax deed where the petitioner provides proof that he held a recorded interest in the property, that he was not named as a party in the publication notice as set forth in section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve him with the notices required"). Here, there is no dispute that respondent was named in the publication and take notices. As noted above, section 22-45(4) specifically provides that this ground for collateral attack is limited to situations where there is proof by one holding a recorded interest in the property "that he or she was not named as a party in the publication notice as set forth in Section 22-20." 35 ILCS 200/22-45(4) (West 2010). Again, there was no proof in this case that anyone who held an interest in the property was not named in the publication notice.

Respondent and the appellate court essentially believe that the failure to include the address and phone number of the county clerk was tantamount to respondent not being named in the notice at all, or in the alternative, that the failure to include the information about the clerk was enough of a reason to declare the tax deed void or voidable in a collateral attack based on a violation of section 22-45(4). But this argument is without merit.

If the legislature believed that it was essential to include the address and phone number of the county clerk in the publication notice, it would have said so plainly, or at the very least would have provided that the publication notice be "identical in form" to the section 22-10 notice as it did in the case of the section 22-25 notice. But unlike section 22-25, which provides that the certified mail notice sent by the circuit court clerk be identical in form to the section 22-10 notice, section 22-20 does not provide that the publication notice be in identical form. Instead, the statutory scheme provides that the publication notice be "published in a newspaper *as set forth in Section 22-20*." (Emphasis added.) 35 ILCS

200/22-15 (West 2010). Section 22-20 in turn specifically lists the information the publication notice must contain, and the address and phone number of the county clerk are not listed among the criteria required. See 35 ILCS 200/22-20 (West 2010).

¶ 29    We therefore conclude, as the appellate court dissent did, that respondent's failure to prove or even allege that petitioner did not name respondent in the notices prevented respondent from establishing grounds for relief under section 22-45(4). Section 22-45 simply does not include the technical defect of failing to provide the name and phone number of the county clerk in the take notices as a ground for collateral relief, and the appellate court erred in relying upon that ground. Section 22-45 evinces an intent on the part of the General Assembly "to protect tax deed orders from collateral attack 'on questions relating to notice,' " unless the challenge squarely fits within the language of section 22-45. *Lowe I*, 217 Ill. 2d at 20-21 (quoting *In re Application of the County Treasurer*, 92 Ill. 2d 400, 408 (1982)).

¶ 30    Perhaps realizing respondent cannot satisfy the requirement in section 22-45(4) of proof that petitioner did not name respondent in the publication notice, respondent argues for a novel interpretation of the statute. Respondent argues that despite the legislature's conjunctive use of the word "and" in section 22-45(4), the word "and" should instead be read in the disjunctive to effectively create an independent ground for collaterally attacking the tax deed if the interested party can simply prove that the tax purchaser did not make a diligent inquiry and effort to serve that party with the notices required by sections 22-10 through 22-30.

¶ 31    Defendant's argument raises an issue of statutory construction, which we review *de novo*. *People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 500 (2005). It is well settled that generally the use of a conjunctive such as "and" indicates that the legislature intended that *all* of the listed requirements be met. *Id.* at 501. In *Parcel*, this court rejected an argument urging the disjunctive reading of the word "and" by stating the following:

> "This contention lacks merit. The pertinent conditions *** are plainly joined with the term 'and.' This court long ago observed the obvious: 'The conjunction "and" *** signifies and expresses the relation of addition.' [Citation.] Of course, the word 'and' is sometimes considered to mean 'or,' and vice versa, in the interpretation of statutes. However, '[t]his is not done except in cases where there is an apparent repugnance or inconsistency in a statute that would defeat its main intent and purpose. When these words are found in a statute and their accurate reading does not render the sense dubious they should be read and interpreted as written in the statute.' *Voight v. Industrial Comm'n*, 297 Ill. 109, 114 (1921)." *Id.* at 500-01.

¶ 32    Here, there is nothing to suggest that an accurate reading of "and" in section 22-45(4) would defeat the main intent and purpose of the statute. Nor is there anything "dubious" about reading "and" conjunctively. Instead, we find that to adopt the respondent's interpretation would mean upsetting the careful balance the legislature has crafted between the competing policies of allowing collateral review in limited circumstances on the one hand and of honoring the finality and marketability of tax deeds on the other hand. We think it obvious that if the legislature had meant to provide a separate ground for a collateral attack based solely on the lack of diligent inquiry and effort in serving the notices, it would have

crafted a subsection (5) to section 22-45. Accordingly, the statute must be applied as written.

¶ 33                                    II. Due Process

¶ 34         We next consider respondent's contention that the tax deed should be set aside because Lorrayne Cornelius was denied her due process right to "adequate notice" under the United States and Illinois Constitutions (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2). Respondent argues that "[c]ollectively, the unsuccessful attempts at personal service, failure to make diligent inquiry and effort to locate and serve her, *** defective publication and numerous defects within the prepared notices resulted in a total lack of notice" and a violation of Lorrayne's due process rights. Citing *Jones v. Flowers*, 547 U.S. 220 (2006), and *In re Application of the County Collector*, 225 Ill. 2d 208 (2007) (*Lowe II*), respondent argues that petitioner should have taken additional steps to find and notify Lorrayne in order to satisfy due process standards after attempts to personally serve her solely at the property of record failed. Specifically, respondent suggests that petitioner should have asked neighbors about Lorrayne's whereabouts, conducted an internet search for her, and sent notice by regular mail.

¶ 35         In *Jones*, the issue was whether the government must take additional steps to provide notice before taking an owner's property when the notice of tax sale is returned undelivered. *Jones*, 547 U.S. at 223. In that case, Jones purchased a home in 1967 on Bryan Street, in Little Rock, Arkansas, and lived there with his wife until he separated from her in 1993. Jones then moved into an apartment but continued to pay the mortgage on the house until it was paid off in 1997. The property taxes, however, went unpaid after the mortgage was paid off. *Id.*

¶ 36         In April 2000, the Commissioner of State Lands mailed a certified letter to Jones at the Bryan Street address notifying him of the tax delinquency and his right to redeem the property. The mailing informed Jones that unless he redeemed the property, it would be subject to public sale two years later on April 17, 2002. The letter was returned "unclaimed." Two years later, the Commissioner published a notice of public sale in the local newspaper. No bids were submitted, but respondent Linda Flowers was eventually allowed to submit a purchase offer. The Commissioner mailed another certified letter to Jones at the Bryan Street address notifying him that his house would be sold to Flowers if he did not pay his taxes, and this letter was also returned "unclaimed." Flowers then purchased the house. After the 30-day period for postsale redemption passed, an unlawful detainer notice was served at the property on Jones's daughter, who then told Jones about the tax sale. *Id.* at 223-24.

¶ 37         The United States Supreme Court in *Jones* began its analysis by reiterating that "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Id.* at 226. Instead, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

¶ 38         The Court noted, however, that it had never addressed the "new wrinkle" of whether due process requires further measures when it is known prior to the taking that the attempt at notice has failed. *Id.* at 227. The Court found that it did not "think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would

- 8 -

do nothing when a certified letter sent to the owner is returned unclaimed." *Id.* at 229. The Court decided that a person actually desirous of informing Jones "would take further reasonable steps if any were available." *Id.* at 230.

¶ 39     The Court explained that there were several reasonable steps that could have been taken when the certified letter to Jones was returned unclaimed: (1) the notice could have been resent by regular mail[3] so that a signature was not required; (2) the notice could have been posted on the front door; or (3) the notice could have been addressed to "occupant." *Id.* at 234-35. The Court rejected Jones's claim, however, that the Commissioner should have looked for Jones's new address in the Little Rock telephone book and other governmental records, including income tax rolls. *Id.* at 235-36. The Court found that such an "open-ended search for a new address—especially when the State obligates the taxpayer to keep his address updated with the tax collector [citation]—imposes burdens on the State significantly greater than the several relatively easy options outlined above." *Id.* at 236.

¶ 40     Finally, the Court was careful to caution that it was declining to prescribe the form of service that states should adopt, determining instead that the State of Arkansas could choose how to proceed in response to the Court's conclusion that notice was inadequate under the particular facts of this case. *Id.* at 238. The Court noted that the states have taken a variety of approaches to the present question. *Id.* It then listed with approval in a footnote several state statutory schemes, including the notice provisions of the Tax Code (see 35 ILCS 200/21-75(a), 22-10, 22-15 (West 2010)). *Jones*, 547 U.S. at 228 n.2 (noting that many states, including Illinois, "require that notice be given to the occupants of the property as a matter of course").

¶ 41     We find that respondent's reliance upon *Jones* is unavailing and that due process concerns were not violated in this case. In *Lowe II*, this court was asked to reconsider its decision in *Lowe I* in light of *Jones*. We began by noting that the Tax Code is distinguishable from the statutory scheme in *Jones*:

> "The notice provided pursuant to the Illinois Property Tax Code is far more comprehensive than the notice provided for in the Arkansas statute at issue in *Jones*. The Arkansas statute required the state to send only one notice, by certified mail, to a property owner notifying him of the government's intent to sell his property for delinquent taxes. In contrast, the Illinois statute provides that the county collector must provide notice to a delinquent taxpayer by certified or registered mail before obtaining a judgment order from the circuit court authorizing the sale of the property. 35 ILCS 200/21–110, 21–115, 21–135 (West 1994). In addition, after the court has ordered the sale of the property and the property has been sold to a tax purchaser, the county clerk must notify the delinquent taxpayer by certified or registered mail that the property has been sold and that the taxpayer may redeem the property by paying the tax arrearage on or before a specified date. 35 ILCS 200/22–5 (West 1994). Finally, a tax purchaser seeking to obtain a tax deed also must send the delinquent taxpayer notice of the sale and the expiration of the redemption period." *Lowe II*, 225 Ill. 2d at 225-26.

---

[3]The Court observed that sending a letter by regular mail might increase the chances it would be received by the intended recipient because unlike certified mail, regular mail is left at the site to be examined later or possibly forwarded by occupants if the owner has moved. *Jones*, 547 U.S. at 235.

¶ 42    This court found that the due process concerns at stake in *Jones* were not at issue in *Lowe II* because Mary Lowe, the property owner, was actually given notice of the tax sale at a time when there was no indication that she was incompetent. *Id.* at 227. This court, however, considered the argument of Lowe's public guardian, that Lowe was denied due process because of the lack of notice for the hearing at which she actually lost title to her home. *Id.*

¶ 43    Specifically, Lowe's public guardian relied upon *Jones*, arguing that certified mail notices in that case were returned "unclaimed," whereas, in Lowe's case, not only were the certified mail notices to her returned "unclaimed," but the envelopes contained a notation from a letter carrier that "Person is Hospitalized" along with carrier's initials and postal route number. The public guardian maintained that *Jones* directly addressed this kind of situation and requires a party seeking a tax deed to follow up on information provided in response to its chosen method of service. *Id.* According to the guardian, had the tax purchaser, Apex, taken additional steps it would have learned that Lowe was incompetent and hospitalized at a mental institution. *Id.* at 228.

¶ 44    In rejecting the guardian's argument, this court found that Apex did take numerous additional steps to notify Lowe of the sale of her property and the filing of the petition for the tax deed. *Id.* This court listed those additional steps as follows: (1) Apex conducted a tract search of the property; (2) the sheriff attempted to personally serve Lowe and "occupant"; (3) the sheriff also sent the section 22-10 take notice by certified mail addressed to Lowe and "occupant"; (4) the clerk of the court attempted to serve Lowe and "occupant" with the section 22-10 notice by certified mail; (5) Apex served the section 22-10 take notice on the law firm that prepared the quitclaim deed in 1993, and on the mortgagee of the property; (6) Apex's agent visited the property and spoke with a neighbor who said that the Lowes owned the property but no one lived there; and (7) Apex checked city and suburban phone directories and voter registration records to find another address for Lowe. *Id.* at 228-29.

¶ 45    This court found that the steps taken by Apex exceeded those suggested in *Jones* as reasonable and in fact included an "open-ended search for a new address" in phone books and government records that was specifically noted in *Jones* as unnecessary. *Id.* at 229. This court said that requiring the tax purchaser to investigate where and why Lowe might be hospitalized would be an "open-ended search [that] would impose a significantly greater burden than required under *Jones*." *Id.* at 230. Accordingly, this court concluded that the attempts at notice were sufficient to satisfy due process under *Jones*. *Id.* at 229.

¶ 46    Turning to the facts of the case before us, we conclude that petitioner also took numerous additional steps to notify respondent of all the proceedings in this case, which culminated in the granting of the petition for tax deed. As in *Lowe II*, petitioner here took all of the required statutory steps that were in excess of that provided by the Arkansas statutory scheme at issue in *Jones*. In that regard, petitioner ordered a title examination and a commitment for title insurance showing the necessary parties for the tax deed. A licensed process server attempted 11 times over a 3-week period to personally serve Lorrayne Cornelius, Melvin Cornelius and "occupant." The process server reported back that there was a vehicle in the driveway but "no one answers our inquiries at the door." The Will County sheriff sent the section 22-10 take notice by certified mail addressed to Lorrayne Cornelius, Melvin Cornelius and "occupant." The clerk of the circuit court of Will County also attempted to serve Lorrayne

Cornelius, Melvin Cornelius and "occupant" with the section 22-10 take notice by certified mail, return receipt requested.

¶ 47      Respondent argues that when service failed at the property, petitioner should have attempted to locate Lorrayne Cornelius by asking neighbors, doing an Internet search of the public records of Will County, or sending the notice to her property by regular mail. Respondent contends that if petitioner had done a search of the public records it would have seen a release on the mortgage of the property dated July 7, 2000, which was recorded in the county recorder's office. On page two of the release is the legend: "Mail to: Vincent Cornelius County Farm Professional Park 122E S. County Farm Rd., Wheaton IL." Respondent argues that petitioner should have reviewed this record and then should have contacted Vincent Cornelius in an attempt to learn the whereabouts of Lorrayne Cornelius.

¶ 48      We find that respondent's argument must be rejected. The search of the records of the county recorder's office that respondent suggests is precisely the sort of "open-ended search for a new address" of the government records that was expressly held not to be required in *Jones* and *Lowe II*.

¶ 49      It is true that petitioner could have sent its notices by regular mail when certified mail notice failed, but we do not read *Jones* as requiring this additional step in every case. Indeed, *Jones* expressly noted that there was leeway for different approaches and observed that the Illinois statutory scheme that requires notice to be sent to "the occupants of the property as a matter of course" in addition to the named parties of record, was an additional step. See *Jones*, 547 U.S. at 234-35, 228 n.2. We also note that regular mail notice was not attempted in *Lowe II* either, yet due process standards were held to be satisfied in that case.

¶ 50      Respondent also argues that the technical defect in the take notices of not including the address and phone number of the county clerk plays into the equation of whether due process standards were met in this case. We find no merit to that contention. Whether the unclaimed notices included the address and phone number of the county clerk has nothing to do with whether the notices themselves were reasonably calculated to reach the respondent. Moreover, assuming the notices had reached their intended recipients, the information omitted was not of such a nature that it rendered the notices constitutionally defective in terms of apprising the interested parties of the pendency of the action and affording them an opportunity to present their objections.

¶ 51                           III. Indemnity Fund

¶ 52      As a final matter, we note that an alternative form of relief might be available to the estate of Lorrayne Cornelius under the indemnity provisions of the Tax Code. See 35 ILCS 200/21-295 *et seq.* (West 2010). The indemnity provisions were enacted by the legislature in 1970 in recognition that taxes may go unpaid and property may be lost to a tax deed in situations where there are equitable circumstances that favor the former property owner. See *Lowe I*, 217 Ill. 2d at 28. "The provisions create an indemnity fund, from which, pursuant to section 21–305 (35 ILCS 200/21–305 (West 2010)), the former property owner may seek a monetary award for the loss of property." *Id.*

¶ 53      Section 21-305(a)(1) provided at the time relevant to this case that an owner who resides on property with four or fewer dwelling units on the last day of the period of redemption, and who is seeking an award of $99,000 or less, may recover from the indemnity fund by

- 11 -

showing equitable entitlement. 35 ILCS 200/21-305(a)(1) (West 2010). The owner does not have to show a lack of fault or lack of negligence for the loss. *Lowe I*, 217 Ill. 2d at 28 n.4; 35 ILCS 200/21-305 (West 2010). Moreover, the statute provides that "[t]he court shall liberally construe this equitable entitlement standard to provide compensation wherever, in the discretion of the Court, the equities warrant the action." 35 ILCS 200/21-305(a)(1) (West 2010).

¶ 54     We do not know for sure from the record before us, but it may be that section 21-305 is suited to afford equity in this case. Lorrayne Cornelius is now deceased, and the importance of the property appears to no longer be as a place of residence for her or her family, but the potential for recovery from the indemnity fund appears to be an asset of her estate. See *Lowe I*, 217 Ill. 2d at 29. Additionally, the fair market value of the property appears to be well under the $99,000 threshold for obtaining recovery without the need to show lack of fault or lack of negligence. Furthermore, the record indicates that Lorrayne must have been a responsible homeowner for many years, who paid off a mortgage in 2000 and regularly paid her property taxes until shortly before she died at an advanced age. It is also undisputed that she did not receive personal service nor did she receive the certified mail notices that were sent to her address. Under the circumstances, and given the broad discretion afforded the circuit court in these kinds of cases, we suggest that the administrator of the estate of Lorrayne Cornelius consider the possibility of filing an indemnification action on behalf of her estate.

¶ 55                                    CONCLUSION

¶ 56     For the foregoing reasons, we reverse the appellate court's decision to affirm the circuit court of Will County's order vacating the tax deed to petitioner.

¶ 57     Judgments reversed.