2020 IL App (1st) 191464
No. 1-19-1464
Opinion filed December 28, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| *In re* APPLICATION OF THE COUNTY COLLECTOR, for Judgment and Order of Sale Against Lands and Lot Returned Delinquent for Nonpayment of General Taxes for the Year 2014 and Prior Years<br><br>(Blossom63 Enterprises LLC,<br><br>    Petitioner-Appellant,<br><br>v.<br><br>Devonshire, LLC,<br><br>    Respondent-Appellee). | ) <br> ) <br> ) <br> ) <br> )   Appeal from the<br> )   Circuit Court of<br> )   Cook County.<br> ) <br> )   No 2017COTD002611<br> ) <br> ) <br> )   Honorable<br> )   James Robert Carroll,<br> )   Judge, presiding.<br> ) |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pierce concurred in the judgment, and opinion.
Presiding Justice Walker dissented, with opinion.

**OPINION**

¶ 1     At an annual tax sale, Blossom63 Enterprises, LLC (Blossom63), purchased the delinquent 2014 taxes on a commercial condominium unit. To complete the purchase, Blossom63 had to pay the delinquent second installment of the 2013 taxes as well. After Blossom63 obtained and recorded a tax deed for the property, Devonshire, LLC (Devonshire), intervened and moved to vacate the order. The trial court granted Devonshire's motion, finding that Blossom63 failed to

strictly comply with section 22-5 of the Property Tax Code (Code) (35 ILCS 200/22-5 (West 2016)) by listing only 2014 as the tax year, without including the second installment of the 2013 taxes. In addition, the trial court found that under section 22-80 of the Code, Devonshire had to pay interest on the amount it owed Blossom63 up to the last day of the period of redemption rather than, as Blossom63 contended, for the 19 months between the date of redemption and the date Devonshire made its payment.

¶ 2 Blossom63 argues (i) it strictly complied with the Code—namely, by listing only 2014 as the tax year sold at the annual sale on its section 22-5 notice of sale, and (ii) Devonshire owed it interest for the 19-month period after the date of redemption. Devonshire asserts (i) Blossom63's section 22-5 notice of sale was deficient because it did not state that Blossom63 also had paid the 2013 second installment taxes, and (ii) no interest was due at all.

¶ 3 We reverse. Blossom63's notice of sale satisfied the requirements and the purpose of section 22-5 by listing only the year for which the taxes were sold. As we are reversing on the tax deed issue, Devonshire does not owe Blossom63, the successful tax purchaser, the disputed interest, which has been held by the circuit court clerk pending this appeal.

¶ 4 Background

¶ 5 At the 2014 annual tax sale, conducted in June 2016, Blossom63 purchased the delinquent 2014 general real estate taxes on a commercial condominium unit owned by Devonshire (the property). (At the time of the sale, the purchaser was GAN C, LLC (GAN C), and the 6420 Longmeadow LLC owned the property. GAN C was succeeded by Blossom63 and 6420 Longmeadow transferred the property to Devonshire. For clarity, we refer to the parties as "Blossom63" and "Devonshire.")

¶ 6     To obtain a certificate of purchase from the county clerk, under section 21-240 of the Code (*Id.* § 21-240), Blossom63 was required to pay all prior unpaid real estate taxes, which, in this case, included the 2013 second installment taxes. The Cook County clerk issued Blossom 63 a certificate of purchase under section 21-250 of the Code (*id.* § 21-250). The certificate stated that Blossom63 paid $40,300.02 to purchase the 2014 taxes and $6,762.55 for the 2013 second installment, for a total of $47,309.57.

¶ 7                         Section 22-5 Notice of Sale and Redemption Rights

¶ 8     After successfully bidding for property at a tax sale and obtaining a certificate of purchase, the tax purchaser can obtain a tax deed as long as the purchaser strictly complies with the Code's notification requirements. Section 22-5 requires that the tax purchaser provide a notice of sale and redemption rights (the "section 22-5 notice of sale") to the last assessee or taxpayer of record within 4 months and 15 days of the sale. The tax purchaser or his or her assignee

> "shall deliver to the county clerk a notice to be given to the party in whose name the taxes are last assessed as shown by the most recent tax collector's warrant books *** the following form completely filled in:

TAKE NOTICE

County of ……………………………………………………………………………………

Date Premises Sold ……………………………………………………………………

Certificate No. ……………………………………………………………………………

Sold for General Taxes of (year) ………………………………………………………

Sold for Special Assessment of (Municipality)

and special assessment number ………………………………………………

1-19-1464

Warrant        No. …………………  Inst.        No. …………………………..

THIS PROPERTY HAS BEEN SOLD FOR

DELINQUENT TAXES

Property located at ……………………………………………………………………

Legal Description or Property Index No. ……………………………………………….

……………………………………………………………………………………………

……………………………………………………………………………………………

   This notice is to advise you that the above property has been sold for delinquent taxes and that the period of redemption from the sale will expire on …………………

   This notice is also to advise you that a petition will be filed for a tax deed which will transfer title and the right to possession of this property if redemption is not made on or before

……………………………………………………………………………

   At the date of this notice the total amount which you must pay in order to redeem the above property is ……………………………………………………………………

YOU ARE URGED TO REDEEM IMMEDIATELY TO

PREVENT LOSS OF PROPERTY

   Redemption can be made at any time on or before ………………… by applying to the County Clerk of, ……………… County, Illinois at the Office of the County Clerk in ……………….., Illinois.

The above amount is subject to increase at 6 month intervals from the date of sale.

Check with the county clerk as to the exact amount you owe before redeeming.

Payment must be made by certified check, cashier's check, money order, or in cash.

For further information contact the County Clerk

ADDRESS: ………………………………………………………………………

TELEPHONE: …………………………………………………………………

……………….

Purchaser or Assignee

Date (insert date)." *Id.* § 22-5.

¶ 9    On September 27, 2016, Blossom63 delivered to the county clerk the section 22-5 notice of sale for forwarding to Devonshire. On the line "Sold for General Taxes of (year)," Blossom63 inserted "2014." The form also stated that the period of redemption would expire on March 29, 2017, and listed $47,340.01 as the amount required to redeem. Blossom63 later extended the period of redemption to September 13, 2017.

¶ 10                    Section 22-10 Notice of Redemption Expiration

¶ 11    Section 22-10 (*Id.* § 22-10) imposes a second notification requirement on the tax purchaser before the county clerk will issue the tax deed. Specifically, not less than three months nor more than six months before the expiration of the period of redemption, a tax purchaser must give the county clerk a notice of redemption expiration (the section 22-10 notice of redemption expiration) to send to the property owner, occupants, and parties interested in the property. See *id.* The section 22-10 notice of redemption expiration form is similar, but not identical, to the section 22-5 notice of sale form and notifies the property owner, occupants, and other parties with an interest in the property that (i) the taxes on the property have been sold, (ii) the redemption period will expire on

a specified date, (iii) a petition for a tax deed will be filed, and (iv) title will transfer to the purchaser if the property owner does not redeem before the redemption period expires. See *id.*

¶ 12    On April 11, 2017, Blossom63 delivered to the county clerk the section 22-10 notice of redemption expiration to be forwarded to Devonshire. Unlike the section 22-5 notice of sale, which stated that the property had been "Sold for General Taxes (Year) 2014," Blossom63's section 22-10 notice of redemption expiration stated that the property had been "Sold for General Taxes (Year) 2014 (2013 Incld)." The 22-10 notice of redemption expiration advised Devonshire that title would transfer unless the taxes were redeemed by September 13, 2017.

¶ 13    On February 15, 2018, Blossom63 applied for an order directing the county clerk to issue a tax deed for the property, attaching copies of the 22-5 and 22-10 notices. The trial court granted the order, finding "Petitioner's Assignor purchased the delinquent 2014 real estate taxes" and ordered the county clerk to issue the tax deed, which was recorded with the Cook County Recorder of Deeds.

¶ 14    Devonshire moved to vacate the tax deed order under section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2016)). Devonshire argued, in part, that either Blossom63's section 22-5 notice of sale or its section 22-10 notice of redemption expiration failed to comply with the Code. Specifically, Devonshire asserted that because the section 22-5 notice of sale only listed 2014 as the tax year sold, while the section 22-10 notice of redemption expiration listed "2014 (2013 incld)," one of the notices must be incorrect.

¶ 15    After a hearing, the trial court found that Blossom63's section 22-5 notice of sale did not strictly comply with the Code because it failed to mention that Blossom63 also had paid the second installment of the 2013 taxes. The court stated, "[Blossom63's] failure to include all the tax years that were delinquent is unacceptable in light of the fact that the tax buyer must strictly comply with

Section 22-5 of the Property Tax Code A notice which specifies the wrong date or incomplete date is treated as no notice within the meaning of the Property Tax Code. *Equity One v. Williams*, 2013 IL App (1st) 130463."

¶ 16     The trial court denied Blossom63's motion to reconsider and ordered Blossom63 to provide Devonshire with the amount owed under section 22-80 of the Code (35 ILCS 200/22-80 (West 2016)). Section 22-80 requires a party who successfully contests the entry of a tax deed to pay the tax deed holder certain amounts it expended in trying to acquire the tax deed. *Id.* § 22-80(b). Blossom63's line item calculation of what Devonshire owed listed $93,332.83 as the estimate for redemption, which included the $47,309.57 Blossom63 paid at the tax sale, and the taxes for 2015 of $38,757.70. The parties agreed on that amount, plus taxes for 2016 and 2017, with interest and costs. The parties disagreed on whether Devonshire needed to pay statutory interest of 1% per month, $16,305.85, on the redemption amount for the period from September 2017, when the redemption period expired, to the date of Devonshire's payment, proposed for April 2019.

¶ 17     Devonshire argued the $16,305.85 in interest was included in the estimate of redemption for the last date to redeem, no further interest would accrue, and Blossom63 was not entitled to interest for the 19-month period after the date of redemption. The trial court agreed with Devonshire, finding that Blossom63 was not entitled to interest beyond the interest included in the estimate of redemption. Devonshire tendered to Blossom63 an amount that did not include the $16,305.85, which Blossom63 refused. The trial court ordered the money be deposited with the clerk of the circuit court pending this appeal.

¶ 18                                        Analysis

¶ 19                                  Standard of Review

The parties concede that a tax deed petitioner must demonstrate that it strictly complied with the notice requirements of the Code. *In re Application of the County Treasurer & ex officio County Collector*, 2011 IL App (1st) 101966, ¶ 44. Whether a section 22-5 notice of sale listing "2014" as the tax year sold strictly complied with the Code presents a question of statutory construction, which we review *de novo*. *In re Application of the County Treasurer & ex officio County Collector*, 2013 IL App (1st) 130103, ¶ 10 (*Flamm*). A reviewing court's primary objective in construing a statute is to give effect to the legislature's intent. *Id.* ¶ 9. The plain and ordinary meaning of the statute is the best indicator of the legislature's intent. *Id.* A statute should be evaluated as a whole, with each provision construed in connection with every other section. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). Courts presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Flamm*, 2013 IL App (1st) 130103, ¶ 9. Courts also may consider the consequences that would result from construing a statute one way or another. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 441 (2010).

¶ 20                                    Section 22-5 Notice of Sale

¶ 21    The primary purpose of Illinois's tax deed system is to coerce tax-delinquent property owners to pay their taxes, not to assist others in depriving the owners of their property. *In re Application of the County Treasurer & ex officio County Collector*, 2013 IL App (1st) 130463, ¶ 10 (*Equity One Investment Fund*). By design, the provisions of this notice benefits citizens and protects their property from sacrifice. It encourages them to redeem their property before interest accumulates, by giving *early* notice and *additional time* to make arrangements to preserve their property rights. *Id.* The notice conveys "all necessary information to the property owner so that he or she may redeem the property." *Id.* ¶ 8.

¶ 22 As noted, the legislature mandates strict compliance with the notice requirements. 35 ILCS 200/22-40(a) (West 2016). The section 22-5 notice of sale alerts the property owner of the tax year sold, the process, and redemption amount to avoid losing the property.

¶ 23 The purchaser must make no substitutions or omissions on a notice form to be entitled to a tax deed. *Equity One Investment Fund*, 2013 IL App (1st) 130463, ¶ 15. From this, we necessarily conclude that, where a section 22-5 post-sale notice imparts complete, correct information, it strictly complies with the Code.

¶ 24 Blossom63 asserts that nothing requires the section 22-5 and section 22-10 notices be identical and that both strictly complied with the statute. Blossom63 contends its 22-5 notice of sale strictly complied by listing only "2014" because the statute clearly and unambiguously asks for a "year," rather than "years." Blossom63 further contends that the "(2013 incld)" in its section 22-10 notice of redemption expiration merely adds information that may, but need not, be provided.

¶ 25 In response, Devonshire asserts that the section 22-5 notice of sale should give information to the owner necessary to redeem and avoid losing the property. Therefore, Devonshire contends, Blossom63 should have listed the same information as the 22-10 notice of redemption expiration, including the amount paid by Blossom63 to complete the purchase. In short, Devonshire asserts that because it would need to pay both tax year 2014 and taxes for the second installment of 2013 to redeem the property, Blossom63's section 22-5 notice of sale was deficient. Devonshire also contends that because Blossom63 was required under section 21-240 of the Code to pay the 2013 second installment to complete the sale, the 2013 taxes were part of the tax sale, and Blossom63 was required to list both 2014 and the partial 2013 installment as the tax years sold on its section 22-5 notice of sale. Devonshire's attorney acknowledged that the "custom and practice" in the

industry "depends on the attorney *** who drafts the [section 22-5 notice of sale]." The parties agreed that this case presents a matter of first impression.

¶ 26 Both parties are correct, to some degree. The section 22-5 notice of sale form has two distinct sections with distinct purposes. The first section informs the property owner that the "property has been sold for delinquent taxes." This section further informs the property owner of the sale and requires the petitioner to list the tax year sold—2014, in this case. A separate section of the Code, section 22-240, says the petitioner must pay all prior unpaid taxes to obtain a certificate of purchase. No reference to section 22-240 is made in the section 22-5 notice of sale (or the section 22-10 notice of redemption expiration). Blossom63 was required to pay the unpaid 2013 second installment to complete the 2014 tax sale purchase, but it did not purchase the 2013 taxes at the 2014 tax sale. So Blossom63 complied with the requirement that it list "Sold for General Taxes of (year)" by listing 2014 only.

¶ 27 Further, Devonshire's claim that including any additional tax years paid on the section 22-5 notice is required is unavailing. Including this information does nothing to facilitate the purpose of this section, which is to notify the owner of the sale of the amount needed to redeem, which included the payment made by Blossom63 of the unpaid 2013 second installment taxes, and the date by which redemption must be made and the need to take action to avoid the issuance of a tax deed to the property. Our supreme court's decision in *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*, 2015 IL 118975, is instructive on this point. In *DG Enterprises*, the supreme court held that a delinquent property owner was not denied the due process right to adequate notice where the tax purchaser's section 22-5 notice of sale omitted the address and phone number of the county clerk. Although required by the statute, the court stated that "the information omitted was not of such a nature that it rendered the notices constitutionally defective in terms of apprising the

interested parties of the pendency of the action and affording them an opportunity to present their objections." *Id.* ¶ 50. Similarly, Blossom63's section 22-5 notice of sale apprised Devonshire that the 2014 taxes had been sold and that it had a right to raise objections in the 2014 general tax sale proceedings. Listing 2014 as the tax year sold, as required by the form, without also listing prior years that must be paid under other sections of the Code, satisfied the purpose and requirements of the section 22-5 notice of sale and did not deny Devonshire any rights to redeem the sale or later present objections to the tax deed petition.

¶ 28 The dissent cites *Gaither v. Lager*, 2 Ill. 2d 293 (1954), to argue that Blossom63's section 22-5 notice was defective. In *Gaither*, which involved a scavenger sale rather than a delinquent tax sale, the notice to the property owner simply stated that the property had been purchased from the county treasurer, the certificate of purchase was assigned to the appellee, and the owner had until a specified date to redeem. It failed to list any year or years sold. Our supreme court found that the omission rendered "the notice totally defective and a title based thereon to be void." *Id.* at 300. Blossom63, however, did list the tax year sold, as required by the statute, making the holding in *Gaither* inapplicable.

¶ 29 The second section of the section 22-5 notice of sale form—the redemption section— serves a different purpose. It advises the property owner that he or she needs to redeem the property to avoid losing title. This section informs the owner that the property will go to tax deed unless redeemed by a specified date for a specified amount of money. Blossom63 satisfied the purpose of this section by informing Devonshire that, by a specified date, it must pay $47,309.57, which includes both the 2014 and 2013 taxes. As noted, the post-sale notice is intended to convey "all necessary information to the property owner so that he or she may redeem the property." The information necessary to avoid the owner losing the property was that the taxes were sold, the

amount required to redeem, and the redemption date. Blossom63's section 22-5 notice of sale form included all of that information, and so it satisfied the statutory requirements. Listing more information on either the section 22-5 form or, as here, on the 22-10 form does not render either form incomplete. We reverse the trial court's finding that the section 22-5 notice of sale was deficient and its order vacating the order for a tax deed.

¶ 30                                    Interest Due

¶ 31    Because we have reversed the circuit court order that vacated the order directing the county clerk to issue the relevant tax deed in favor of Blossom63, we must also reverse that portion of the circuit court order, entered under Section 22-80 of the Code, requiring Devonshire to pay Blossom63 interest on certain funds for the time after the redemption period expired. Blossom63 has prevailed on its tax purchase, no sale in error has been declared, and Blossom63 is not entitled to any reimbursement under section 22-80. This matter is remanded to the circuit court for entry of the appropriate orders consistent with this decision.

¶ 32    Reversed and remanded.

¶ 33    PRESIDING JUSTICE WALKER, dissenting:

¶ 34    I respectfully dissent.

¶ 35    The majority opinion starts with a misstatement of fact, follows with a misinterpretation of an Illinois Supreme Court case, and ends with the wrong conclusion.

¶ 36    The majority asserts, "Blossom63 Enterprises, LLC (Blossom63), purchased the delinquent 2014 taxes on a commercial condominium unit." *Supra* ¶ 1. Our supreme court explained that in proceedings like the sale at issue here, under the Code, the county collector sells the property in exchange for payment of the tax delinquency. See *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 529 (1999). The Code itself provides that the county collector may

offer for sale "property *** on which the taxes *** have not been paid." 35 ILCS 200/21-205 (West 2016). Blossom63's predecessor did not "purchase[ ] the delinquent 2014 taxes." Blossom63's predecessor paid the unpaid taxes for 2013 and 2014 to purchase Devonshire's predecessor's property.

¶ 37    Blossom63's Take Notice states that the county collector sold Devonshire's property "for General Taxes of (year) 2014." Blossom63 contends that its disclosure meets the strict statutory requirement because the Take Notice uses the term "year," not "year or years." In *Gaither v. Lager*, 2 Ill. 2d 293 (1954), our supreme court interpreted a statute that required the tax purchaser to give the owner notice of the "year taxed." (Emphasis and quotation marks omitted.) *Gaither*, 2 Ill. 2d at 299. The court found that the purchaser's "notice does not state for what year or years the taxes were assessed, nor does it show whether the land was sold for general taxes or special assessments as [the statute] expressly requires." *Gaither*, 2 Ill. 2d at 300. The use of "(year)" on the Take Notice similarly refers to the "year or years" for which the purchaser paid the taxes. Contrary to the assertion in Blossom63's Take Notice, the county collector actually sold the property for the taxes for 2013 and 2014. The Take Notice does not strictly comply with the Code's requirements because of the incorrect statement. See *In re Application of the County Collector*, 295 Ill. App. 3d 703, 710 (1998).

¶ 38    Our supreme court has emphasized the need for strict compliance with the Code. *In re Application of the County Collector*, 225 Ill. 2d 208, 212-13 (2007). "The sale of one's property to satisfy his debt to another is a drastic remedy and the provisions of the law by which it is brought about must be strictly complied with ***." *Block v. Hooper*, 318 Ill. 182, 187 (1925). When the purchaser does not strictly comply with the statute, courts will "allow redemption upon equitable terms though the period of redemption has expired." *Id.* at 187. The Supreme Court of Rhode

Island explained the concerns courts must balance when a property owner fails to pay property taxes:

> "[F]orfeitures are not favored in the law. *** Equity has been especially vigilant to relieve against forfeitures when compensation can be made and the forfeiture is merely a security for the payment of money. [Citations.]
>
> ***
>
> The government's power to tax real estate is attended by the concomitant power to secure tax payments by levy and sale of property on which taxes are overdue. *** Tax sales are or may be inequitably penal in effect; one may forfeit an estate of great worth for delinquency in paying a tax that is a minute fraction of the property's value. ***
>
> Legislatures and courts have acted to ameliorate the severity of tax forfeitures. Although tax-sale statutes furnish a strong arm with which to enforce the government's right to its revenues, the statutes also protect the right of property owners to their real estate. *** Because the right of redemption is a valuable property right, [citation], and the potential loss to the owner is grave, the courts have as a matter of general policy interpreted tax statutes liberally in favor of redemption." (Internal quotation marks omitted.) *Albertson v. Leca*, 447 A.2d 383, 387-88 (R.I. 1982).

¶ 39    Illinois courts have also emphasized that "a liberal construction will be given redemption laws." *Mohr v. Sibthorp*, 395 Ill. 418, 424 (1946). "The tax buyer must strictly comply with the statutory notice requirements without regard to whether any owner, *inter alia*, was misled by the defective notice." *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670 (2005). "[S]trict compliance, rather than substantial compliance, was intended by the legislature." *In re Application of the County Treasurer & ex officio County Collector*, 2011 IL App (1st) 101966,

¶ 34. The lack of strict compliance with the statute justifies the circuit court's decision here to vacate the order for the tax deed. *In re Application of the County Collector*, 356 Ill. App. 3d at 673-74.

¶ 40    The majority cites *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*, 2015 IL 118975, as authority for issuing a tax deed here, despite the lack of strict compliance with the Code. The *DG Enterprises* court explained that it needed to address the conflicting policies involved when a party collaterally attacks a tax deed, policies not involved before the circuit court has entered a final judgment for a tax deed. The court said:

> "On the one hand, [t]he forced sale of a home is a grave and melancholy event [citation] that can have severe consequences for the delinquent taxpayer. Allowing a collateral attack upon the tax deed order provides the delinquent taxpayer with an opportunity, in addition to the direct appeal, to ensure that the order was properly obtained. On the other hand, the availability of a collateral challenge to the tax deed order tends to undermine the finality and, hence, the marketability of the tax deed. This point is significant because tax purchasers participate in the tax sale system in order to obtain marketable titles. [Citation.] If tax purchasers do not participate in tax sales, then delinquent taxpayers lose the incentive to pay their real estate taxes and tax revenues fall." (Internal quotation marks omitted.) *DG Enterprises*, 2015 IL 118975, ¶ 24 (quoting *In re Application of the County Collector*, 217 Ill. 2d 1, 17-18 (2005)).

¶ 41    The court held that section 22-45 of the Code, applicable to collateral attacks on tax deeds, severely limits the circumstances allowing the court to provide relief to a property owner after the circuit court has entered a final judgment and the county clerk has issued the tax deed. *DG Enterprises*, 2015 IL 118975, ¶ 25. Section 22-45 does not include the strict compliance

requirement stated in section 22-40 of the Code, the section applicable to direct appeals from orders for issuance of tax deeds.

¶ 42    The case before us, unlike *DG Enterprises*, does not involve a collateral attack on a tax deed that the county clerk issued. It does not even involve a direct appeal from an order for issuance of a tax deed. Instead, Devonshire timely pointed out the lack of strict compliance to the circuit court, and the circuit court, in accord with the Code and precedent, found that it had a duty to vacate its order for issuance of a tax deed. The need for finality of tax deeds, emphasized in *DG Enterprises*, does not arise because the county clerk never issued a tax deed here.

¶ 43    The factual misstatement and the misconstruction of *DG Enterprises* have especially pernicious effects. The City of Chicago and many citizens face trying financial circumstances. Many property owners will have difficulty finding the means to pay property taxes. The majority's decision, requiring the issuance of a tax deed even though the tax sale purchaser did not strictly comply with the Code, will lead to the transfer of more properties from those facing financial hardships to those who have the wherewithal to pay the taxes. As the Rhode Island court noted, the tax purchasers will in some cases acquire a property for "a minute fraction of the property's value." *Albertson*, 447 A.2d at 388. The majority's opinion, by gifting windfalls to those able to pay the taxes while harshly penalizing those unable to pay, will exacerbate the destructive effects of economic hardship. I ask our supreme court to review this case and reverse the majority's ill-thought decision.

¶ 44                              Redemption Amount

¶ 45    The City, as well as its citizens, faces severe financial hardship. The City needs to collect property taxes. Tax sales remain an important tool for the collection of taxes. To protect those who

purchase properties at tax sales, the General Assembly adopted section 22-80(b) of the Property Tax Code, which provides:

> "[A]ny order of court finding that an order directing the county clerk to issue a tax deed should be vacated shall direct the party who successfully contested the entry of the order to pay to the tax deed grantee ***:
>
> > (1) the amount necessary to redeem the property from the sale as of the last day of the period of redemption ***; and
> >
> > (2) amounts in satisfaction of municipal liens paid by the tax purchaser or his or her assignee, and the amounts specified in paragraphs (1) and (3) of subsection (a) of this Section, to the extent the amounts are not included in paragraph (1) of this subsection (b)." 35 ILCS 200/22-80(b) (West 2016).

¶ 46    The circuit court here found that section 22-80 did not require payment to Blossom63 of the statutory interest for the period from September 2017 to the actual date of payment in June 2019. To determine the correct amount of interest, the court must construe paragraph (1), subsection (a) of section 22-80, which provides that the redeeming party must pay the tax purchaser

> "all taxes and special assessments purchased, paid, or redeemed by the tax purchaser or his or her assignee, *** whether before or after entry of the order for tax deed, with interest at the rate of 1% per month from the date each amount was paid until the date of payment pursuant to this Section." 35 ILCS 200/22-80(a)(1) (West 2016).

¶ 47    Section 22-80 establishes the right of the tax purchaser to compensation for the use of its money from the time it pays the tax to the time it receives the redemption amount. Here, as in *In re Application for Tax Deed*, 311 Ill. App. 3d 440, 446 (2000), the court has

"no reason to prevent plaintiff from receiving the time value of its money and the costs and fees it paid during the history of this case. *** [T]he legislature did not want to punish the tax purchaser by not allowing him to be reimbursed for money spent. Otherwise, the risk of purchasing a tax deed would increase, and fewer parties would engage in redeeming property."

¶ 48    The amount offered by Devonshire fully refunded Blossom63 for all amounts Blossom63 paid, and it compensates Blossom63 for the use of Blossom63's money from the time of the tax sale to the end of the period of redemption in September 2017. The offer does not compensate Blossom63 for the use of the money paid in the tax sale for the period from September 2017 to the actual tender of payment in June 2019. The $16,305.85 Blossom63 included in its calculation of amounts due counts as "interest at the rate of 1% per month from the date each amount was paid until the date of payment pursuant to this Section" (35 ILCS 200/22-80(a)(1) (West 2016)), and it is an "amount[ ] specified in paragraph[ ] (1) *** of subsection (a) of this Section, *** not included in paragraph (1) of this subsection (b)." 35 ILCS 200/22-80(b)(2) (West 2016). I would find that the statute requires payment of the interest at the rate of 1% per month on the redemption amount for the period from September 2017 to June 2019. I would reverse the order for payment insofar as it omitted this amount from the calculation of the amount due.

¶ 49    I commend the trial judge because he demonstrated a clear understanding of the facts, followed the law, and ruled properly. Nonetheless, the majority misstates the facts, misinterprets the law, and requires the issuance of a tax deed to a purchaser who did not strictly comply with the code. Hence, I respectfully dissent.

---

**No. 1-19-1464**

---

| | |
|---|---|
| **Cite as:** | *In re Application of the County Collector*, 2020 IL App (1st) 191464 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2017-COTD-002611; the Hon. James Robert Carroll, Judge, presiding. |
| **Attorneys for Appellant:** | Steven Friedman, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eric H. Wudtke and Terry J. Carter, of Carter Legal Group, P.C., of Chicago, for appellee. |