2024 IL App (3d) 220465

Opinion filed October 9, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF DU PAGE COUNTY, ILLINOIS, for Order of Judgment and Sale Against Real Estate Returned Delinquent for the Non-Payment of General Taxes and Special Assessments for the Year 2013 and Prior Years | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois,<br><br><br><br>Appeal No. 3-22-0465<br>Circuit No. 17-TD-123 |
| (ZHY Investments, LLC, Petitioner-Appellant, v. Victor Hsing, Respondent-Appellee). | ) ) ) ) ) ) | <br><br><br>Honorable<br>Paul M. Fullerton,<br>Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Justice Brennan concurred in the judgment and opinion.
Presiding Justice McDade concurred in part and dissented in part, with opinion.

_____

**OPINION**

¶ 1 In January 2018, the circuit court of Du Page County ordered a tax deed to be issued to petitioner ZHY Investments, LLC (ZHY) for real property in Naperville. Two months later, respondent Victor Hsing filed a petition to vacate the circuit court's order, arguing that he, as the owner of the real property, was not given sufficient notice of the tax deed proceedings. In late 2021 and early 2022, the parties filed cross-motions for summary judgment. The circuit court granted

Hsing's motion for summary judgment, ruling that Hsing's due process rights were violated and that ZHY committed fraud. Thereafter, the court vacated the order issuing a tax deed to ZHY. ZHY appeals, arguing that the circuit court erred in granting summary judgment to Hsing. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3        In December 1998, Victor Hsing purchased a residence located at 2751 Stockton Road in Naperville. The deed to the property listed Hsing as the "[t]axpayer" along with the address to the property. The address "2707 Flagstone Cir, Naperville, IL" was handwritten next to Hsing's name elsewhere on the deed. The deed listed "TONY SHU, ESQ, 208 S. La Salle #1400, Chicago, IL 60604" as the "Mail To" recipient.

¶ 4        In November 2014, ZHY purchased delinquent property taxes on Hsing's Stockton Road property for the 2013 tax year. Thereafter, ZHY paid the 2014 and 2016 taxes for the property. Hsing paid the 2015 property taxes by mailing two personal checks to the Du Page County Collector. The checks contained Hsing's residential address in California.

¶ 5        On August 8, 2017, ZHY filed a petition for tax deed for the property. The petition indicated that notice of the tax deed proceedings would be mailed to the following individuals: "Victor C. Hsing, 2751 Stockton Road, Naperville, IL 60564"; "Occupant, 2751 Stockton Road, Naperville, IL 60564"; "Anna Figueiredo, 2751 Stockton Road, Naperville, IL 60564"; "Pedro Figueiredo, 2751 Stockton Road, Naperville, IL 60564"; and "Victor C. Hsing, 2707 Flagstone Circle, Naperville, IL 60564." Pedro and Anna Figueiredo had previously rented the subject property from Hsing.

¶ 6        The circuit clerk sent notices to those individuals by certified mail on August 14, 2017. The notice sent to "UNKNOWN OCCUPANT" was returned with the notation "VACANT[;]

2

UNABLE TO FORWARD." All other notices sent to the Stockton Road address were returned "UNCLAIMED[;] UNABLE TO FORWARD." The notice sent to Hsing at Flagstone Circle was signed by someone. The name is illegible but appears to begin with the letter "V." The address is also not clear but appears to contain the numbers 2, 7, and 7, and the street name seems to begin with the letter "F."[1]

¶ 7     On January 2, 2018, ZHY filed a verified application for tax deed for the property. In its application, ZHY asserted:

"Diligent inquiry was made regarding the identity, address and location of all persons entitled to notice of the filing of the Petition and the facts contained in the Petition. Unless stated otherwise, such inquiry encompassed a search and review of relevant documents recorded with the Du Page County Recorder of Deeds; property tax records maintained by the Du Page County Clerk and the Du Page County Treasurer; directories, Internet searches, a Tract Search provided by Fidelity National Title; and other documents and resources all aimed at identifying parties having any discernable interest in the Property."

ZHY further asserted:

"As reflected in Group Exhibit 5, Process Server Michael Kinnerk of K's Investigations & Security Service, Inc. attempted to personally serve the take notice upon

---

[1]Reproduced here is the scanned image of the recipient information from the returned receipt:

Signature of Recipient :

Address of Recipient :

3

Victor C. Hsing at the Property and an additional address that appears connected to Victor C. Hsing. According to the Affidavit of the Process Server, the Property is vacant and regarding the second address, Victor C. Hsing no longer resides there. In addition, K's Investigations served the take notice upon Victor C. Hsing by Certified Mail sent to the Property and an additional address that appears connected to Victor C. Hsing with the service accepted on one occasion by Victor C. Hsing."

¶ 8     Attached to the application were many exhibits, including affidavits from the process server, Matthew Uthe of Uthe & Uthe, Inc. The first affidavit stated that Uthe attempted to serve notice on "Victor Hsing at 2751 Stockton, Naperville, IL 60564" on August 14, 2017, but stopped attempting service because the house was "empty." The second affidavit stated that Uthe attempted service on "Victor C. Hsing at 2707 Flagstone, Naperville, IL 60564" on August 14, 2007, but stopped attempting service after speaking to an occupant, Mrs. Abnabathula, who said she had "lived there since 2004." Uthe concluded that Hsing had "[m]oved out" of both residences.

¶ 9     Uthe also sent notices by certified mail, return receipt requested, on August 17, 2017, to Hsing at both the Stockton Road and Flagstone Circle addresses and to "Occupant" at the Stockton Road address. The receipt for the notice sent to Hsing at the Stockton Road address was returned marked: "NOT DELIVERABLE AS ADDRESSED[;] UNABLE TO FORWARD." The receipts for the notices sent to Hsing at Flagstone Circle and to "Occupant" at Stockton Road were both returned marked "UNCLAIMED[;] UNABLE TO FORWARD."

¶ 10     A hearing on ZHY's application was held on January 3, 2018, before the Honorable Anne Therieau Hayes. ZHY's attorney, Christine Perakis, advised the court of attempts at service by certified mail to Hsing, stating: "We did send service certified mail to the property and to the second location. The property came back unclaimed. The second one, it appears that it was

4

signed for by him at the second address." When the court asked if the return receipt was signed for by Hsing, Perakis responded: "Yes. The certified mail—There's a copy. It appears that he did—It was accepted and, as best as I can discern, I would guess that this was his signature as opposed to somebody else's. So this is in Exhibit 5." After examining that exhibit, the court stated: "And the 22-25 notice that the clerk does, it looks like the notice was, in fact, signed by what appears to be—It's difficult to make out. Certainly a V is the first letter. And the address, 2707, it appears to be *** the Flagstone address."

¶ 11 The trial court questioned Perakis about which years ZHY paid the taxes on the property, finding ZHY's receipts for payment of the 2014 and 2016 taxes, but not the 2015 taxes. Perakis responded: "I'm missing it on here. Let me check. I'm going to have to double-check. I—I'm almost positive we—you now, that the client paid it; so I might have to just make a quick phone call." Perakis returned to the court with the following information:

> "I contacted the office, and this is what I determined: There are no outstanding taxes owed. It appears somebody paid the 2015. So we—So my client paid the—you know, the tax sale 2013—***—posted subtaxes 2014. When they went to go post subtaxes on all their open PINs in 2015 it was previously paid. My client went in in September to pay them, and somebody paid this particular parcel in August. It doesn't show me—If I look at the website, I have it here. It shows that they're paid, so there's nothing owed. And then my client went in to do the 2016 and posted on the subtaxes."

Perakis stated that she did not know who paid the 2015 taxes.

¶ 12 After the hearing, the trial court entered an order directing the issuance of a tax deed and an order of possession to ZHY. On February 5, 2018, the Du Page County clerk issued a tax deed to ZHY, which ZHY recorded on February 8, 2018.

¶ 13 On March 13, 2018, Hsing filed a petition to vacate the court's January 3, 2018, order directing issuance of a tax deed to ZHY. He alleged that he received no notice of the tax deed proceedings. He asserted that he resides in California and that his address was readily ascertainable because it could be found on the checks he provided to the Du Page County collector to pay his 2015 taxes. He alleged that ZHY committed fraud or failed to conduct a diligent inquiry to determine his whereabouts and serve him with notice of the tax deed proceedings.

¶ 14 ZHY filed a motion to dismiss Hsing's petition to vacate, and the Honorable Brian J. Diamond granted ZHY's motion to dismiss. Hsing appealed, and the Second District reversed the dismissal of Hsing's petition and remanded for further proceedings. *In re Application of the County Treasurer & ex officio County Collector of Du Page County*, 2019 IL App (2d) 180909-U.

¶ 15 On remand, the parties engaged in discovery and completed several depositions. Perakis, ZHY's attorney, was deposed on March 17, 2021. She testified that she had worked on hundreds of tax deed cases. She testified that when she does so, she tries to locate individuals who live at or have an interest in a property by performing an online address search on the Internet's White Pages, using the property address. She testified about what she did to locate Hsing and anyone else with an interest in the property in this case:

"I had the tract search. I had the recorded deed. I had a mortgage from the builder, I believe. There was a huge mortgage on the property. And I did my clerk/treasurer website searches with the tax bill that we had printed.

I also did my White Pages search with the property addresses where I found the only identified owner from the deed and from the records that we had available, that he was the only owner, and he was identified at not the property address but a subsequent property address that matched the deed and any additional searches that as I did the

6

property, I didn't find anything that would have directed me elsewhere regarding the individual owner."

She testified that when she conducted her searches, Hsing's name was not associated with the subject property but was associated with the Flagstone property in 2017.

¶ 16　　At the time of her deposition, Perakis did not recall if she performed an Internet search for "Victor Hsing" but agreed that it was her "practice and custom to do Internet searches using the names of individuals, such as the owner of a house." She said that if she had performed an Internet search for "Victor Hsing," she would have printed out the results only if she obtained information inconsistent with what she already had. Perakis testified that she did not believe she searched Hsing's name on White Pages but that she generally searched property owners' names on Google.

¶ 17　　Perakis admitted that she incorrectly identified the process server on ZHY's verified application for tax deed as Michael Kinnerk, rather than Uthe. She explained that she has used both individuals to serve property owners with notice in tax deed cases.

¶ 18　　Hsing was deposed and testified that he has lived in California since 2001. He purchased the subject property as a place to stay when he came to Chicago on business, but he never ended up staying there. Hsing's friend, Frederick Au, resided at 2707 Flagstone Circle in Naperville when Hsing purchased the subject property. In 2004, Au moved out of the Flagstone residence and into another home in Naperville. Au looked after Hsing's property and forwarded mail to Hsing in California. In late February 2018, Au discovered the locks on the Stockton property had been changed and notified Hsing.

¶ 19　　In November 2021, Hsing filed a motion for summary judgment, asserting that (1) ZHY procured the tax deed by fraud, (2) his due process right to notice was violated, and (3) Shu was entitled to notice. Attached thereto was an affidavit from Amanda Moressi, one of Hsing's

attorneys, who stated that she called the Du Page County treasurer on March 12, 2018, to request the 2015 tax year payment images and received an email that same day from the treasurer's office containing images of Hsing's personal checks containing his California address.

¶ 20     In January 2022, ZHY filed a response to Hsing's motion for summary judgment and a cross-motion for summary judgment, arguing that (1) it exercised due diligence in attempting to serve notice on Hsing, (2) Shu was not entitled to notice, (3) it did not commit fraud, and (4) Hsing's due process rights were not violated.

¶ 21     On October 3, 2022, the Honorable Paul M. Fullerton entered an order granting summary judgment to Hsing and vacating the order issuing a tax deed to ZHY. The court ruled that ZHY violated Hsing's due process rights by failing to conduct an online name search for "Victor Hsing." The court further ruled that ZHY committed fraud because "the trial court *** had no real time to prepare for the prove-up hearing and was effectively misled as to the efficacy and reasonableness of the service attempts to Hsing." The court stated: "A review of the tax deed application would have revealed that ZHY failed to conduct a very simple name search of Hsing when one was very much warranted."

¶ 22                                II. ANALYSIS

¶ 23     ZHY appeals the circuit court's grant of summary judgment to Hsing, arguing that (1) the notices it provided were sufficient to satisfy Hsing's due process rights and (2) it did not commit fraud in its application for tax deed or at the prove-up hearing on the application.

¶ 24     Summary judgment is properly granted where the pleadings, depositions, and admissions on file, together with any affidavits, indicate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). The purpose of summary judgment is not to answer a question of fact but to determine whether one

8

exists. *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶ 18. When parties file cross-motions for summary judgment, they agree that no factual issues exist and that the disposition of the case turns on the circuit court's resolution of purely legal issues. *Maryland Casualty Co. v. Dough Management Co.*, 2015 IL App (1st) 141520, ¶ 45. We review the grant of summary judgment *de novo. Id.*

¶ 25                               A. Due Process

¶ 26        The Property Tax Code contains specific methods of notice that a tax purchaser must provide to obtain a tax deed. 35 ILCS 200/22-5 (West 2016). After a tax sale, the tax purchaser must deliver a notice to the county clerk to be given to the party in whose name the taxes were last assessed. *Id.* This notice must be delivered to the county clerk within 4 months and 15 days after the tax sale, and the county clerk must mail the notice within 10 days of receipt by registered or certified mail. *Id.* This section 22-5 "Take Notice" advises a party that his property has been sold for delinquent taxes, that redemption can be made until a specified date, and that a petition for tax deed will be filed by the tax purchaser if redemption is not made. *Id.*

¶ 27        The tax purchaser must send a second "Take Notice" to the owner, occupants, and interested parties not less than three months or more than six months before the expiration of the period of redemption. *Id.* § 22-10. The section 22-10 take notice must give notice of the sale and the date of expiration of the period of redemption. *Id.* Service of the take notice is to be made in three ways: (i) personally by the sheriff, (ii) by registered or certified mail with return receipt requested, and (iii) by three publications in a local newspaper. *Id.* §§ 22-15, 22-20, 22-25. Also, within the time period for the second take notice (within six months but not less than three months before the redemption period expires), the tax purchaser may file a petition in the circuit court requesting an order directing the county clerk to issue a tax deed to the subject property. *In re*

9

*Application of the County Collector*, 225 Ill. 2d 208, 212 (2007) (*Lowe*). The tax purchaser will receive an order issuing a tax deed if the subject property is not redeemed and if the purchaser proves to the circuit court that he or she strictly complied with the notice provisions in sections 22-10 through 22-25 of the Property Tax Code. *Id.* at 213.

¶ 28 The statutory notice requirements set forth in the Property Tax Code, when followed, comport with due process. *In re Application of the County Collector*, 397 Ill. App. 3d 535, 548 (2009) (citing *Lowe*, 225 Ill. 2d at 225). "[D]ue process does not require actual notice before the government may take an owner's property." *In re Application of the County Treasurer & ex officio County Collector of Cook County* (*TCF Bank v. Community Partners, LLC*), 2015 IL App (1st) 133693, ¶ 35 (*TCF Bank*) (citing *Jones v. Flowers*, 547 U.S. 220, 226 (2006)). Instead, notice must be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Jones*, 547 U.S. at 226 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

¶ 29 In *Jones*, the United States Supreme Court ruled that when the government knows that its attempts to notify a property owner of tax deed proceedings by certified notice have failed, it should take "additional reasonable steps to notify" the property owner. *Id.* at 234. Further steps may include sending a notice by regular mail, posting notice at the property, and addressing a notice to "occupant." *Id.* at 234-35. However, "additional reasonable steps" need not include looking for a property owner's new address in a telephone book or other governmental records, such as tax rolls, because "[a]n open-ended search for a new address—especially when the State obligates the taxpayer to keep his address updated with the tax collector [citation]—imposes burdens on the State significantly greater than the several relatively easy options outlined above." *Id.* at 236.

10

¶ 30    Our supreme court in *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*, 2015 IL 118975, ¶ 46, found a property owner's due process rights were satisfied where the tax buyer made attempts to serve the property owner in person at the property and sent notices addressed to "occupant" and the property owner by certified mail. The court rejected the property owner's argument that the tax buyer was required to further attempt to locate her by talking to neighbors, performing an Internet search of county records, or sending notice to the subject property by regular mail. See *id.* ¶¶ 47-48. The court held that a search of county records is "precisely the sort of 'open-ended search for a new address' of the government records that was expressly held not to be required in *Jones*." *Id.* ¶ 48. The supreme court also found that *Jones* did not require notices to be sent by regular mail when certified mail notice failed. See *id.* ¶ 49.

¶ 31    Here, ZHY attempted to serve Hsing personally at two different addresses—the property address and the Flagstone Circle address handwritten on the deed to the subject property. ZHY also sent notice by certified mail to Hsing and "occupant" at both addresses and instructed the Du Page County Clerk to send notices to Hsing and "occupant" at both addresses. The notices ZHY sent were all returned undelivered or unclaimed; however, one of the notices sent by the Du Page County Clerk's office was returned with a signature.

¶ 32    In its order granting summary judgment to Hsing, the circuit court concluded that Hsing's due process rights were violated because ZHY failed to conduct an Internet name search, which would presumably have revealed Hsing's California address. We disagree with this conclusion for several reasons.

¶ 33    First, as explained above, ZHY provided all the notices required by the Property Tax Code. Most of those notices were returned unclaimed or undelivered; however, one notice was returned with a signature. While the signature was illegible, it was reasonable for ZHY to believe it

11

belonged to Hsing since it clearly began with the letter "V" and, as the trial court stated, the address handwritten next to the signature "appear[ed] to be *** the Flagstone address." Further, we observe that this returned notice occurred in 2017, *after* the 2015 taxes were paid. Thus, ZHY was unlike the government in *Jones* and the tax buyer in *DG Enterprises*, who knew that their attempts to serve notice on the property owner had failed because all notices were returned unclaimed. Hsing's signature appeared to be on one of the notices; therefore, ZHY was under no obligation to take "additional reasonable steps to notify" Hsing of the impending tax sale of his property. See *Jones*, 547 U.S. at 234.

¶ 34        Additionally, the record does not establish that ZHY failed to conduct an Internet name search of Hsing. At her deposition three years after the prove-up hearing, Perakis testified that she did not specifically recall if she performed an Internet search of Hsing's name; however, she testified that it was her custom and practice to search for property owners' names on Google. She further testified that she would have no record of performing such a search unless she found information she did not already have about the property owner. Thus, the evidence does not support the circuit court's conclusion that ZHY did not conduct an Internet name search of Hsing.

¶ 35        Finally, due process does not require a tax buyer to perform an Internet search of a property owner's name to attempt to locate the property owner at an address other than the property address. See *DG Enterprises*, 2015 IL 118975, ¶¶ 47-48. This is the type of "open-ended search for a new address" both the United States Supreme Court and our supreme court have held is unnecessary to comport with due process. See *id.* ¶ 48; *Jones*, 547 U.S. at 236. Sending notices by certified mail addressed to Hsing and "occupant" at the property address and the Flagstone Circle address was sufficient to satisfy Hsing's due process rights. See *DG Enterprises*, 2015 IL 118975, ¶ 49. If Hsing desired to have notices regarding his Naperville property sent to him in California, he should

12

have updated his address with the Du Page County collector. Hsing's failure to provide the Du Page County collector with his California address did not impose a burden on ZHY to perform an exhaustive search to locate Hsing at some location other than the property address. Thus, the circuit court erred in ruling that Hsing's due process rights were violated.

¶ 36     Our partially dissenting colleague, however, disagrees with our due process analysis, finding that ZHY did not exercise due diligence because it failed to determine who paid the 2015 taxes for property. We disagree for several reasons.

¶ 37     First, the partial dissent requires us to imagine facts contrary to those that exist in this case. The uncontested facts establish that the payor of the 2015 taxes was Hsing, not someone else who "had some recognizable interest in the property that merited notice." *Infra* ¶ 61. If there had been an interested party who did not receive notice, a tax deed could not have been issued to ZHY. See 35 ILCS 200/22-40(a) (West 2022) (directing issuance of a tax deed only if certain requirements are met, including that "the notices required by law have been given"); *In re Application of Ward*, 311 Ill. App. 3d 314, 319 (1999) (Property Tax Code's notice requirements are mandatory and must be satisfied prior to the issuance of a tax deed). Because there was no interested party who did not receive notice in this case, the trial court properly issued a tax deed to ZHY.

¶ 38     Additionally, even if someone other than Hsing had paid the taxes in 2015, that individual would not have possessed a recognizable interest in the property that merited notice. "[A]n interested party entitled to notice" under the Property Tax Code includes property owners as well as nonowners who have "any interest in real property other than a contingent interest and other than an ownership interest *** including without limitation a mortgage, equitable mortgage or other interest in the nature of a mortgage, leasehold, easement, or lien." 35 ILCS 200/21-285 (West 2022). A prior tax purchaser is "not an interested party entitled to notice." *In re Petition of Conrad*

13

*Gacki Profit Sharing Fund for Tax Deeds*, 261 Ill. App. 3d 982, 985 (1994). In this case, ZHY purchased taxes for the property in tax years 2013, 2014, and 2016 and filed its petition for tax deed in 2017. Thus, if someone other than Hsing had purchased the 2015 taxes, that individual would have been a prior tax purchaser and, therefore, not an interested party entitled to notice. See *id.* Because ZHY was not obligated to provide notice to a prior tax purchaser, due process did not require ZHY to identify who paid the 2015 taxes for the property.

¶ 39 Finally, the partial dissent is attempting to create a new requirement for due diligence that is not supported by existing law. It is well settled that due diligence is satisfied where a tax purchaser makes "reasonable efforts to notify all persons whose interest may reasonably be inferred from the public records regarding the property's ownership." *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 2011 IL App (1st) 101966, ¶ 44 (citing *In re Application of the County Treasurer*, 347 Ill. App. 3d 769, 777 (2004) (*HomeSide Lending*)). Due diligence does not require a tax purchaser to search nonpublic records or make a Freedom of Information Act (FOIA) request (see 5 ILCS 140/1 *et seq.* (West 2022)) to obtain information that is not publicly available. *In re Application of the County Treasurer of Cook County*, 2022 IL App (1st) 200280-U, ¶ 88 (*White*). Here, the public records obtained by ZHY and provided to the court at the prove-up hearing showed that the 2015 taxes had been paid but did not identify who paid them. Due diligence did not require ZHY to further investigate who paid the taxes.

¶ 40 To support this new due diligence requirement, the partial dissent asserts that only "minimal effort" would have been required for ZHY to identify who paid the 2015 taxes. *Infra* ¶ 76. We disagree with this assumption. While the evidence showed that Hsing's attorney was able to obtain documents related to tax payments Hsing made in 2015, we find it inappropriate to

14

assume that it would have been just as easy for ZHY or its attorney to do so. Moressi, Hsing's attorney, attested in her affidavit that the Du Page County Treasurer's Office e-mailed her the 2015 tax year payment images showing Hsing's payments soon after she called and requested them. However, Moressi was the attorney for Hsing, the record owner and tax assessee of the property. Presumably, Moressi identified herself as Hsing's attorney when she called the treasurer's office and requested images of checks written by her client. That an employee of the Du Page County Treasurer's Office provided an attorney representing a property owner with images of the property owner's *own* checks used to pay *his* taxes does not establish that ZHY or its attorney would have received that same information if they had called the Treasurer's office and requested it. In fact, Gwen Henry, the Du Page County Treasurer, testified at her deposition that if someone called her office seeking information about who paid taxes on a property or sought payment records for a specific year, she would generally direct them to submit a FOIA request to obtain that information. As this appellate court recently held, a taxpayer is not required to submit a FOIA request to satisfy due diligence. See *White*, 2022 IL App (1st) 200280-U, ¶ 88.

¶ 41    For these reasons, we disagree with the partial dissent that due process required ZHY to identify who purchased the 2015 taxes.

¶ 42                                 B. Fraud

¶ 43    Section 22-45(3) of the Property Tax Code permits a collateral attack on the issuance of a tax deed where there is "proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee." 35 ILCS 200/22-45(3) (West 2022). Generally, fraud in a tax deed proceeding requires "a wrongful intent—an act calculated to deceive." *Dahlke v. Hawthorne, Lane & Co.*, 36 Ill. 2d 241, 245 (1966). However, because tax deed proceedings involve the government taking property of private owners of real

15

estate, "[d]ue process concerns demand a special interpretation of the fraud requirement of section 22-45(3)." *HomeSide Lending*, 347 Ill. App. 3d at 780. Thus, in tax deed proceedings, "[t]he failure to inform the court of any facts that might change the court's ruling can amount to fraud for purposes of vacating tax deeds." *Id.* at 781. It is the burden of the property owner to raise issues the trial court was not aware of that could have changed the court's ruling. See *TCF Bank*, 2015 IL App (1st) 133693, ¶ 27. If the property owner fails to identify any such issues, no grounds exist for finding fraud. *Id.*

¶ 44        Here, the circuit court ruled that fraud was committed in this case because "the trial court had no real time to prepare for the prove-up hearing and was effectively misled as to the efficacy and reasonableness of the service attempts to Hsing." The court further stated that "a review of the tax deed application would have revealed that ZHY failed to conduct a very simple name search of Hsing when one was very much warranted." We disagree for several reasons.

¶ 45        First, the record belies the circuit court's conclusion that "the trial court had no real time to prepare for the prove-up hearing." While ZHY filed its application for tax deed just one day before the prove-up hearing, the record reflects that the court took its time and reviewed ZHY's application and exhibits before entering its order issuing a tax deed to ZHY. In fact, the court noticed that the record did not contain a receipt showing that ZHY paid the 2015 taxes and inquired about that, causing ZHY to perform additional research and return to the court with an answer. The court also specifically asked about the notices sent to Hsing and examined the receipt that was returned containing a signature, concluding that the signature started with a "V" and the address handwritten below the signature appeared to be the address of the Flagstone property. Thus, the record does not support the circuit court's conclusion that the court at the prove-up hearing had inadequate time to examine the application for tax deed and its contents.

16

¶ 46　　　　Additionally, the record does not support the court's finding that ZHY "effectively misled" the court "as to the efficacy and reasonableness of the service attempts to Hsing." At the prove-up hearing, Perakis told the court about ZHY's attempts to serve Hsing and noted that many of those attempts failed. Perakis pointed out that one notice sent to Hsing was returned with a signature that appeared to belong to Hsing. The court examined the signed receipt and agreed that it appeared to contain Hsing's signature. The court did not question ZHY about what, if any, further attempts it made to locate or serve Hsing at any other addresses, and ZHY did not provide any false or misleading statements about further attempts it made to locate or serve Hsing.

¶ 47　　　　Finally, the circuit court's conclusion that "a review of the tax deed application would have revealed that ZHY failed to conduct a very simple name search of Hsing when one was very much warranted" was erroneous and improper for two reasons. First, as explained above, the circuit court's conclusion that ZHY "failed to conduct a very simple name search of Hsing" is not supported by the record. See *supra* ¶ 35. Additionally, in analyzing whether ZHY committed fraud, it was improper for the court to consider the sufficiency of ZHY's efforts to locate and serve Hsing with notice of the tax deed proceedings. See *DG Enterprises*, 2015 IL 118975, ¶¶ 29-32 (finding that section 22-45 of the Property Tax Code does not provide a separate ground for collateral attack on a tax deed based on a lack of diligent inquiry or effort in serving notices).

¶ 48　　　　To establish by clear and convincing evidence that ZHY committed fraud, Hsing had to prove that (1) there were facts known to ZHY that ZHY failed to provide to the court and (2) if the court had known those facts, it might have changed its ruling. See *HomeSide Lending*, 347 Ill. App. 3d at 781; *TCF Bank*, 2015 IL App (1st) 133693, ¶ 27. In this case, neither Hsing nor the trial court pointed to any facts known to ZHY at the time of the prove-up hearing that it failed to disclose to the court. Thus, the circuit court erred in finding that ZHY committed fraud.

¶ 49                                   C. Summary Judgment

¶ 50          Because the circuit court erred in ruling that Hsing's due process rights were violated and

that ZHY committed fraud, the circuit court's entry of summary judgment in favor of Hsing was,

likewise, erroneous. We further find that no questions of fact exist and that ZHY is entitled to

judgment as a matter of law. Therefore, we remand this case to the circuit court for entry of an

order granting summary judgment to ZHY and reissuing a tax deed to ZHY for the subject

property.

¶ 51                                      III. CONCLUSION

¶ 52          The judgment of the circuit court of Du Page County is reversed, and the cause is

remanded.

¶ 53          Reversed and remanded.


¶ 54          PRESIDING JUSTICE McDADE, concurring in part and dissenting in part:

¶ 55          I agree with the majority's conclusion that the trial court erred by finding that ZHY

committed fraud during the hearing. *Supra* ¶¶ 42-48. I respectfully dissent, however, with its

conclusion that it also erred in finding that the procedures ZHY used to notify Hsing violated his

procedural due process rights. *Supra* ¶¶ 36-41. Accordingly, I concur in part and dissent in part

with the majority opinion.

¶ 56          Although ZHY provided the requisite statutory notice, that alone is not sufficient to

establish that it also fulfilled its independent duty under the constitution to provide notice that

comports with due process. Unlike rigid statutory requirements, "[d]ue process is a flexible

concept" that must take many factors into account. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d

185, 201 (2009) (citing *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 272

(2004)). To comport with due process, the notice provided must be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Critically, "not all situations calling for procedural safeguards call for the same kind of procedure." (Internal quotation marks omitted.) *Konetski*, 233 Ill. 2d at 201 (quoting *Lyon*, 209 Ill. 2d at 272 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))). To determine whether due process was provided in a particular case, we must review the specific set of facts presented. Thus, ZHY's use of exactly the same types of notice previously found to satisfy due process in a different case, under a different set of facts, does not ensure its compliance under the unique set of facts and circumstances presented here.

¶ 57 In my view, the unique facts of this case support the conclusion that the notices sent by ZHY fell short of fulfilling its due process obligation. In reaching the opposite conclusion, the majority ignores one key fact: ZHY's failure to recognize and act on critical information showing that another entity paid over $8800 for the 2015 taxes on the property, making it an interested party that merited a notice attempt.

¶ 58 To overcome that omission, the majority suggests that that conclusion improperly relies on speculation by "requir[ing] us to imagine facts contrary to those that exist in this case. The uncontested facts establish that the payor of the 2015 taxes was Hsing, not someone else ***. *Supra* ¶ 37. When the relevant facts are viewed in context, however, no imagination is necessary.

¶ 59 The relevant time frame for this court's analysis is the period *preceding* ZHY's submission of its notices. The majority's critique, however, relies on information that came to light *well after* all the notices had been sent out, thereby relying on information outside that time

19

period. In reviewing whether, "under all the circumstances," ZHY took the requisite steps to satisfy due process, this court must focus on the sufficiency of *ZHY's investigation into the mandated recipients of its notices*, and that investigation that ended long before Hsing was revealed as the payor of the 2015 taxes. See *Jones*, 547 U.S. at 226 (quoting the standard from *Mullane*, 339 U.S. at 314). Contrary to the majority's assertion, the proper analysis does not rely on "imaginary facts" that conflict with reality but, instead, relies on the *actual facts available to ZHY when it decided where to send the notices*.

¶ 60        Prior to sending out any notices, ZHY possessed information that another entity paid the 2015 property taxes, making that fact highly relevant to our analysis. Accordingly, ZHY knew, or should have known through the use of reasonable diligence, that the person who had made those payments was potentially entitled to notification as an "interested party," triggering a need for at least *some* additional investigation. To comport with due process, ZHY had to act as if it was "actually desirous of informing [the real property owner]" of the tax deed proceeding, which meant " 'tak[ing] further reasonable steps if any were available.' " *DG Enterprises*, 2015 IL 118975, ¶ 38 (quoting *Jones*, 547 U.S. at 230). ZHY's failure to conduct even a minimal inquiry into the identity of the unknown taxpayer undermines its purported effort to take all steps "reasonably calculated" to notify all "interested parties" (internal quotation marks omitted) (*id.* ¶ 37 (quoting *Jones*, 547 U.S. at 226)) and is not an "imaginary fact" but, rather, an essential factor in this court's analysis.

¶ 61        The payment of nearly $9000 in property taxes strongly suggests that the payor had some recognizable interest in the property that merited notice. The existence of those payments also seriously undercut ZHY's claim in paragraph six of its verified tax deed application that

"*[d]iligent inquiry was made regarding the identity, address and location of all persons entitled to notice* of the filing of the Petition and the facts contained in the Petition. Unless stated otherwise, *such inquiry encompassed a search and review of* relevant documents recorded with the Du Page County Recorder of Deeds; *property tax records maintained by the Du Page County Clerk and the Du Page County Treasurer*; directories, Internet searches; a Tract Search provided by Fidelity National Title; and other documents and *resources all aimed at identifying parties having any discernable interest in the Property.*" (Emphases added.)

Even though it attached a printout to its tax deed application clearly showing that another party paid the 2015 taxes, ZHY utterly failed to recognize and act on the significance of that information.

¶ 62    Later, the trial court reviewed the application and supporting documents at the tax deed hearing, quickly identified the discrepancy in the 2015 tax payments, and questioned ZHY's attorney Perakis about it. Perakis's response confirmed that she had not reviewed the tax records she had previously printed out. When questioned about the payments at her subsequent discovery deposition, Perakis again asserted that she had no idea that the 2015 property taxes had been paid by someone else, stating:

"I looked at the information I had at that moment in hand, and the website showed that those taxes were paid in 2015. I had a receipt that my client had gone in September to pay taxes on PINS. And obviously, they could not pay those if they were already paid. I don't know when that issue arose, as I was surprised at the hearing. If you read the transcript, I was unaware that we hadn't paid the '15 taxes."

21

¶ 63    On further questioning, Perakis admitted that, as early as August 9, 2017, she had a computer printout showing that someone else had paid those taxes. As she testified, "[t]he fact that the taxes were paid on August—the 2015 taxes are paid in August appear [*sic*] on that document; that is correct." Her only explanation for failing to notice that another party with a potential interest in the property had paid a full year of property taxes, which totaled over $8800, was that, at that stage of her due diligence inquiry, she was only confirming that the taxes had not been redeemed. As she stated that, "on August 9th, 2017, when I was working on this file, I printed this to show that these taxes were not redeemed." Moreover, she "didn't become aware of [the prior tax payments] until the judge brought it to [her] attention at" the tax deed hearing.

¶ 64    Critically, Perakis added that she typically reviewed a property's tax records *prior to the tax deed hearing*. Here, however, her surprise at the revelation that someone else had paid the 2015 taxes indicates that she strayed from that protocol, contradicting the claim in the verified application that ZHY conducted a "*[d]iligent inquiry *** regarding the identity, address and location of all persons entitled to notice *** *[encompassing] *a search and review of *** property tax records maintained by the Du Page County Clerk and the Du Page County Treasurer*." (Emphases added.)

¶ 65    That contradiction is vital to the proper analysis of Hsing's due process claim. Those concerns were echoed in multiple statutes that required ZHY to send notices to all "*parties interested in* the property." (Emphasis added.) 35 ILCS 200/22-10 (West 2016) (stating "*A purchaser *** shall not be entitled to a tax deed to the property sold unless,* not less than 3 months nor more than 6 months prior to the expiration of the period of redemption, *he or she gives notice of the sale and the date of expiration of the period of redemption to the owners, occupants, and parties interested in the property ***.*" (Emphasis added.)); 35 ILCS 200/22-30

22

(West 2016) (stating "the purchaser *** may file a petition ***,  asking that the court direct the county clerk to issue a tax deed if the property is not redeemed from the sale. *** *Notice of filing the petition *** shall be given to occupants, owners and persons interested in the property* as part of the notice provided in Sections 22-10 through 22-25 *** and any person owning or interested in the property may *** appear in the proceeding" (emphases added). In addition, the United State Supreme Court has long held that the due process clause also requires notice be provided to all "interested parties." (Internal quotation marks omitted.) *Jones*, 547 U.S. at 226.

¶ 66     According to Perakis's deposition testimony, ZHY possessed the information about the prior payment of the 2015 taxes no later than August 9, when she researched the tax record and printed out information demonstrating that they had already been paid. Thus, ZHY was put on notice that an unknown payor had an interest in the property *before* it ever attempted to notify Hsing of the tax deed filing, but it did nothing with that information. The import of ZHY's failure to notice the relevant facts within its possession is apparent from the trial court's observation of this critical fact after only a relatively brief examination of ZHY's verified application, an observation that led the judge to ask Perakis about the status of those payments at the hearing.

¶ 67     Even Perakis's own testimony confirms the relevance of the information about the 2015 tax payments to ZHY's due diligence inquiry. She maintained that her standard process was to review, prior to the tax deed hearing, the status of the property's taxes during a later stage of her due diligence inquiry. She testified that she reviews property tax records

> "at the time that we are—the time that we're pursuing the tax deed. And normally, that's when I will gather information to determine the status of the taxes. If there's any taxes

23

that are owed, they would have to be paid before the clerk would issue a tax deed, so that's when I would make that evaluation. It's just later on in the process." That testimony establishes the relevance of the 2015 tax payments, but it appears that in this particular instance ZHY overlooked that step because Perakis maintained that she did not know that the 2015 taxes had been paid by another party prior to the tax deed hearing. Accordingly, the record shows that, despite uncovering critical information showing that someone else was potentially entitled to notice as an interested party, Perakis failed to recognize or act on that information at any point prior to the tax deed hearing.

¶ 68 Nonetheless, the majority contends that "even if someone other than Hsing had paid the taxes in 2015, that individual would not have possessed a recognizable interest in the property that merited notice." *Supra* ¶ 38. In support of that contention, the majority cites *Gacki*, 261 Ill. App. 3d at 985. *Id.* The conclusion in that case, however, was repudiated in *In re Application of the County Collector*, 391 Ill. App. 3d 656, 660 (2009), where the court noted that "that part of the [*Gacki*] opinion was only *dicta* and, therefore, not controlling authority." In addition, the court in *County Collector* noted that it "could find no authority as to whether a *subsequent* tax purchaser has a sufficient interest in the property to mandate notice under section 22-10 of the Property Tax Code," distinguishing the reasoning in *Gacki* because there "this court held that a *prior* tax purchaser was not entitled to notice of a *subsequent* tax purchaser's petition for tax deed." (Emphases added.) *Id.*

¶ 69 Here, as in *County Collector*, the payment of the 2015 property taxes occurred *subsequent to ZHY's purchase of the delinquent 2012 taxes*, not prior to it. Accordingly, as in *County Collector*, even the *dicta* from *Gacki* relied on by the majority is inapplicable. Without a basis in *Gacki* to support the conclusion that the payor of the 2015 taxes did not "possess[ ] a

24

recognizable interest in the property that merited notice," the majority's reasoning fails. *Supra* ¶ 38.

¶ 70    I reject the majority's analysis because it refuses to consider ZHY's failure to acknowledge and apply highly relevant information within its possession, demonstrating that a then-unidentified party had a previously unrecognized interest in the property. As "an interested party," that unidentified entity was entitled to notice. ZHY's failure to actually see what it was required to look for cannot supplant its obligation to provide notice that comports with the dictates of due process. Blind ignorance of readily available information about the existence of a party that is entitled to notice cannot justify lowering the bar for procedural due process by excusing ZHY's admitted failure to act on that highly relevant information.

¶ 71    Fundamental principles of due process clearly articulate the steps that must be undertaken to provide notice under a given set of facts. "Procedural due process is founded upon the notion that prior to a deprivation of life, liberty or property, a party is entitled to 'notice and opportunity for [a] hearing *appropriate to the nature of the case*." (Emphasis added and internal quotation marks omitted.) *Passalino v. City of Zion*, 237 Ill. 2d 118, 124 (2009) (quoting *Jones*, 547 U.S. at 223). The gold standard for determining whether notification attempts comport with due process is whether those attempts were " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 126 (quoting *Mullane*, 339 U.S. at 314). When an initial attempt at notice fails, as it did here, successive attempts must reflect an "actual[ ] desire[ ] to inform an owner" to be constitutional, particularly when the notice "concerns such an important and irreversible prospect as the loss of a house." *Jones*, 547 U.S. at 229, 230. Those protections support our supreme court's stated policy that "[t]he law favors redemptions, and the redemption statute will

25

be liberally construed unless injury to the tax purchaser results." *In re Application of the Cook County Treasurer*, 185 Ill. 2d 428, 432 (1998).

¶ 72    Here, Perakis's failure to notice the payment of the 2015 property taxes by an unknown party cannot be overlooked. As the United States Supreme Court has declared, constitutionally adequate notice must be " 'reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (Emphasis added.) *Jones*, 547 U.S. at 226 (quoting *Mullane*, 339 U.S. at 314). To comport with due process, that critical information had to be recognized by ZHY and applied to inform its attempts to provide notice to all parties with an interest in the property, but it was not. The failure of ZHY's initial notification attempts made its need to use that information to fulfill the goals of due process even more critical. Although the majority asserts that one of the notices sent by ZHY may have been successful because it was returned with a signature that began with the letter "V," it also admits that the remainder of the signature was illegible. Moreover, that notice was returned only *after* ZHY chose to ignore the printout showing that a still-unidentified entity had paid the 2015 taxes. Information received after ZHY decided not to inquire about who paid those taxes cannot rectify its prior omission. Indeed, ZHY's discovery of the 2015 tax payment information as a part of its own due diligence inquiry makes its reliance on an alleged lack of knowledge even more egregious. This court cannot permit a tax deed petitioner to skirt the mandates of due process by relying on its own blind ignorance of readily available information to justify its utter failure to even attempt to identify the mystery payer of the 2015 property taxes.

¶ 73    Under the constellation of facts in this case, if ZHY "actually desired" to provide notice " 'reasonably calculated, *under all the circumstances*, to apprise *interested parties* of the

26

pendency of the action and afford them an opportunity to present their objections,' " it would have taken at least some initial steps to identify the unknown taxpayer. (Emphases added.) See *Passalino*, 237 Ill. 2d at 126 (quoting *Mullane*, 339 U.S. at 314). Here, ZHY did nothing.

¶ 74    As the *Jones* Court explained,

"We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed. If the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain, one would certainly expect the Commissioner's office to prepare a new stack of letters and send them again. No one 'desirous of actually informing' the owners would simply shrug his shoulders as the letters disappeared and say 'I tried.' Failure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman." *Jones*, 547 U.S. at 229.

¶ 75    Similarly, ZHY failed to use information obtained during its due diligence review that showed an unidentified person had an interest in the property. The fact that Perakis claimed not to have noticed the 2015 tax payment prior to the tax deed hearing cannot excuse ZHY's failure to use information that is vital to the constitutionality of its notification efforts. If it could, anyone seeking to obtain a tax deed could simply overlook any information surfacing during a due diligence search that tended to increase its notification burden. This court cannot allow the right to due process to be subverted so easily.

¶ 76    Moreover, the record strongly suggests that ZHY could have identified who paid the 2015 taxes with minimal effort. When Hsing's counsel requested copies of the checks used to

27

pay the 2015 property taxes from the county, they were e-mailed within mere hours. Although the majority "find[s] it inappropriate to assume that it would have been just as easy for ZHY or its attorney to" find out who paid the taxes, its subsequent discussion succumbs to the same alleged flaw.

¶ 77        In its analysis, the majority states that, "*[p]resumably*, Moressi identified herself as Hsing's attorney when she called the treasurer's office and requested images of checks written by her client." (Emphasis added.) *Supra* ¶ 40. Absolutely nothing in the record suggests, however, that Hsing's counsel identified herself as the property owner's legal representative or that she received preferential treatment by the county staff or that county staff would not have treated the same request by ZHY any differently, particularly when ZHY had purchased the delinquent taxes and, as part of its effort to obtain a tax deed, was statutorily required to show that all the taxes were paid and all interested parties were sent notice.

¶ 78        The check copies obtained by Hsing's counsel clearly showed Hsing's residing address in California, readily providing ZHY with an alternative notification address. That type of simple, specifically targeted search, which arose naturally out of information gathered during ZHY's own due diligence search for interested parties, is readily distinguishable from the type of open-ended search of a local phone book or general government records that has been rejected by reviewing courts. See *Jones*, 547 U.S. at 236.

¶ 79        The majority, however, reaches the opposite conclusion, claiming that the "partial dissent is attempting to create a new requirement for due diligence that is not supported by existing law." *Supra* ¶ 39. It is not. It is simply applying the constitutionally required mandate to individually examine the specific facts and circumstances presented in each case that comes before this court to determine whether due process has been provided. The steps required to

28

comport with due process here are unique because the facts in this case are unique. "Due process is a flexible concept" that necessarily considers a multitude of factors specific to each individual case. *Konetski*, 233 Ill. 2d at 201 (citing *Lyon*, 209 Ill. 2d at 272). The steps ZHY had to undertake to provide constitutionally sound notice are as unique as the facts here, and the same is true of every due process case that this court decides.

¶ 80        After considering all the facts in this specific case, I conclude that ZHY simply did not take steps " 'reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (Emphasis added.) *Jones*, 547 Ill. at 226 (quoting *Mullane*, 339 U.S. at 314). Accordingly, its myopic and truncated effort to identify all interested parties entitled to notice failed to fulfill its mandated due process obligations. For that reason, I dissent from the majority's procedural due process analysis.

*In re Application of the County Treasurer & ex-officio County Collector of Du Page County*, 2024 IL App (3d) 220465

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 17-TD-123; the Hon. Paul M. Fullerton, Judge, presiding. |
| **Attorneys for Appellant:** | Joseph D. Ryan, of Law Offices of Joseph D. Ryan, P.C., of Highland Park, and Timothy J. Storm, of Barrington, for appellant. |
| **Attorneys for Appellee:** | Mindy S. Salyer and Amanda L. Moressi, of Salyer Law Offices, LLC, of Chicago, for appellee. |